225 So.2d 708 (1969)
Guillaume DANOS, Sr., Administrator of the Succession of Bazelike Mire, Wife of and Urbin Danos, also known as Urbain Danosse
v.
WATERFORD OIL COMPANY et al.
No. 7754.
Court of Appeal of Louisiana, First Circuit.
July 2, 1969.
Rehearing Denied August 28, 1969.
*710 William J. White, Gretna, and William J. Daly, New Orleans, for appellant.
Peltier & Peltier, by Harvey Peltier and Donald L. Peltier, Thibodaux, and Milling, Saal, Saunders, Benson & Woodward, by Lawrence K. Benson, J. B. Miller and F. Frank Fontenot, New Orleans, for Waterford Oil Company; Chaffee, McCall, Phillips, Burke, Toler & Sarpy, by E. Harold Saer, Jr., and B. Lloyd Magruder, New Orleans, for Texas Crude Oil Co. and another.
Lancelot P. Olinde, New Orleans, for Humble Oil & Ref. Co.
Before LANDRY, SARTAIN and MARCUS, JJ.
LANDRY, Judge.
This is a petitory action by Guillaume Danos, Sr. (Administrator), Administrator of the Successions of Urbin Danos, also known as Urbain Danosse, who died in 1890, and his wife Bazelike Mire Danos, who died in the year 1879, to establish title in said successions to certain real property situated in Lafourche Parish and for an accounting of the revenues derived therefrom by defendants, the present record owners and mineral lessees of the property in dispute. The lower court dismissed plaintiff's suit after sustaining defendants' dilatory exceptions of lack of procedural capacity to sue and failure to join necessary parties. From said judgment Administrator has appealed. We affirm the judgment rendered below.
The basic issue in this action is one of law, namely, whether appellant's appointment as Administrator was valid, thereby entitling said Administrator to represent decedents' successions. In essence, the lower court held Administrator's appointment invalid as decedents' successions had ceased to exist long before letters of administration were issued therein to Administrator in 1958.
This present action is the latest in a series of suits in both the Federal Courts and the courts of this state. The object of the several suits is to claim title to certain marshlands situated in Lafourche Parish and to obtain for the benefit of decedents' estates the proceeds and revenues from mineral lease and development therefrom. In essence the claim is based on certain transactions involving Urbin Danos, Sr. (Urbain Danosse) who acquired the property by patent from the State of Louisiana in 1867.
It is conceded Urbin Danos, Sr. was married but once and then to Bazelike Mire, the date of the marrage antedating Danos' acquisition of subject property which formed part of the community existing between said spouses. In 1872 Urbin Danos, Sr. sold to one of his children, Urbin Danos, Jr., a tract of land measuring two arpents by forty arpents, being a portion of the land patented to him by the State in 1867. The transfer reserved to the elder *711 Danos a right of way over the property conveyed. Bazelike Mire Danos died, intestate, in 1879; her surviving spouse, Danos, Sr., followed her in death, intestate, in 1890. Subsequent to the purchase from his father, the Junior Danos sold portions thereof to his father-in-law, Joseph Guidry. In 1905, Danos, Jr. and Joseph Guidry jointly conveyed to North Louisiana Land Company all title acquired by Danos, Jr., in all lands inherited by Danos, Jr. from his deceased father. By mesne conveyances, the lands acquired by North Louisiana Land Company became the property of defendant herein, Waterford Oil Company.
Of the marriage between Urbin Danos, Sr. and his said wife, eight children were born, namely: J. Guillaume Danos, Henry Danos, Urbin Danos, Jr., Marguerite Danos, wife of Pierre C. Autin, Mathilde Danos, wife of Philippe Plaisance, Elise Danos, wife of Edmond C. Guidry, Adele Danos, wife of Felicien Guidry, and Gustave Danos.
J. Guillaume Danos died May ____________, 1873, (sic in the record), intestate, having never married and leaving no issue. His succession, opened June 5, 1878, lists as his sole surviving heirs at law his father, Urbin Danos, Sr., his mother, Bazelike Danos, and his hereinabove named seven brothers and sisters, of whom, Gustave Danos is recited to be a minor. No succession proceedings were ever opened to settle the estates of Urbin Danos, Sr. and his spouse until an administration thereof was provoked by plaintiff in 1958.
Defendant's title to subject property emanating through Urbin Danos, Jr. and Joseph Guidry apparently remained unchallenged until 1954 and 1955, in which years two actions in jactitation were filed in Lafourche Parish by Administrator and 184 other persons, all allegedly heirs of the elder Danos and his wife. Both said jactitory actions were dismissed on pleas of thirty years' prescription and title to the disputed lands confirmed in defendant Waterford. Thereafter Administrator instituted proceedings in the United States District Court, Eastern District of Louisiana, as Administrator of the Successions of Mr. and Mrs. Urbin Danos, Sr. The Federal District Court dismissed Administrator's said action because of a lack of procedural capacity to sue as representative of the successions involved. Said judgment of dismissal was affirmed by the United States Fifth Circuit Court of Appeals on April 30, 1959. See 266 F.2d 76.
In this action defendants have filed dilatory exceptions of lack of procedural capacity, non-joinder of necessary parties and vagueness; defendants also interposed peremptory exceptions of prescription, no right and no cause of action.
The trial court found it unnecessary to pass on defendants' peremptory exceptions inasmuch as it dismissed this action after sustaining the exceptions of lack of procedural capacity and non-joinder of necessary parties. As hereinabove indicated the lower court was of the view appointment of an administrator for decedents' successions was invalid inasmuch as the estates had long since been accepted unconditionally by all the heirs and there were no longer any successions in existence to administer. Our learned brother below also concluded the appointment as Administrator was obtained purely as a matter of convenience for the filing of this action. He was of the further opinion there was no need of an administration herein and that the proper parties to bring this action are the heirs of decedents. Appellant's suit was therefore dismissed below and a 90 day period permitted for the heirs to intervene as parties plaintiff.
In this court defendants moved to dismiss the appeal on the ground the judgment of dismissal below was an interlocutory decree and therefore not appealable. This court on April 14, 1969, 225 So.2d 707, held the judgment final and appealable and denied the motion to dismiss.
*712 The stated purpose of this action is to recover, on behalf of the heirs concerned, property which was ostensibly conveyed by their ancestor in title 86 years prior to appointment of an Administrator of their estates and 68 and 79 years, respectively, after the death of the decedents concerned. In contending for the right of administration under the circumstances, Administrator cites and relies upon La.C.C.P. Article 685 which authorizes succession representatives to prosecute all actions to enforce the rights of a decedent or his succession while the estate is under administration, and that the heirs or legatees need not be joined therein. It is contended the cited authority was intended to make litigation convenient, easy, and less expensive by permitting the administrator to sue for all the heirs thus eliminating the expense incident to citing each heir in person. The Administrator also argues his position is at least impliedly supported by the provisions of La.C.C.P. Article 3393 which permits reopening of successions upon discovery of additional assets after discharge of the succession representative, or for any other proper cause.
Our jurisprudence appears well settled that at the death of an individual his succession exists as a separate, distinct legal entity until terminated by proceedings had pursuant to administration by an administrator or executor, or its unqualified acceptance by all the heirs concerned.
The above stated rule was recognized and applied in the early case of Blake v. Kearney, 30 La.Ann. 388, which concerned a suit to partition a succession. The action was opposed on the ground the court was without jurisdiction over the succession because it had been terminated by action of the heirs following the decedent's death, amounting to unconditional acceptance. The court recognized that unconditional acceptance by all the heirs ends the succession's existence, but expressly held to accomplish such result acceptance must be by all the heirs, without exception, because it must either exist or be extinct as to all heirs concerned. In the Blake case, supra, the court found the succession had not terminated since it had been accepted for and on behalf of certain minor heirs who were capable only of accepting with benefit of inventory.
The rule established in Blake v. Kearney, supra, was followed and stated in Kelley v. Kelley, 198 La. 338, 3 So.2d 641, in the following language.
"In Blake v. Kearney, which was decided by the same Court (through the same Justice as the organ of the Court) that decided the case of Soye v. Price, 30 La.Ann. 93, it was expressly held that `a succession is an ideal being, a unity. It can not exist as to one heir and be extinct as to another. To terminate the existence of a succession the heirs must all be sui juris, and have capacity to render themselves, by their acts, unconditionally liable for the succession debts. This a minor can not do; and, therefore, no extra judicial acts or contracts of a minor can legally terminate the existence of the succession.'"
The law of this state, favorably commented upon by respected authority, is that successions are administered as a convenient and efficient means of satisfying the debts of the decedent and effecting a proper distribution of the residue of the estate among the heirs. As aptly observed by the late noted Professor McMahon in his excellent work entitled "2 McMahon, Louisiana Practice", at page 1616:
"The sole raison d'etre of executors and administrators is to settle successions (estates of deceased persons) by the payment of all debts and the subsequent delivery of the residuum to the heirs."
It follows that once the debts of the succession are paid and all property disposed of, the function of the administrator ceases, as does the succession entity itself. Since there is then no longer a need for its continuance, the being of the succession entity terminates.
*713 When there is no need for administration of an estate and the assets pass into the hands of the heirs, the succession ends upon their unqualified acceptance, tacit or express, or on their being recognized as owners and sent into possession by judgment of a proper court. In this regard, we find the following in Kelley v. Kelley, supra:
"When an heir accepts a succession and takes possession of its effects unconditionally, he becomes the owner of the property and the succession, as such, ceases to exist. The recourse of the creditors is against him. If there is more than one heir, the creditor's action lies against each for his virile share." (Citations omitted.)
Also settled is the issue that once all the heirs of a succession have accepted unconditionally by taking possession of the property, selling a portion thereof and partitioning other parts among themselves, and have committed acts of ownership and heirship indicating acceptance pure and simple, the succession ceases to exist. This rule was expressly recognized and applied in Buillard v. Davis, 185 La. 255, 169 So. 78, from which we cite as follows:
"In the case of Brashear v. Conner, 29 La.Ann. 347, 349, the court held, as is well expressed in the syllabus, that:
`Where the heirs are all of age, and present, and represented, and have accepted the succession purely and simply, and there are no debts due by the succession, there is no necessity for the appointment of an administrator.'
"In the course of the opinion, this court said:
`There was really no succession to open after the proceeding to annul and set aside the will and the judgment annulling it; for as we have already seen that proceeding was instituted and conducted by Mrs. Conner in her quality of heir, and in it she alleged that the sole heirs are John J. Osborne, who has sold and transferred all his rights in said estate to his sister, Mrs. Brashear, who is the remaining heir, and who appeared in that proceeding as well as the present litigation, and is alleged to be in possession of the property. From that time there was no succession to administer, and the heirs who accepted purely and simply represented the deceased both as to his rights and obligations. The heir who accepts is considered as having succeeded to the deceased from the moment of his death. R.C.C., article 947. He is of full right in place of deceased, as well for his rights as his obligations. R.C.C. 945. All that remained was to partition the property between the heirs. Under such circumstances the property is vested in the heirs, and not in the succession.'" (Citations omitted.)
Obviously the above rules are subject to application of pertinent prescriptive rules established by the statutory law of our state governing time limitations for the acceptance or rejection of successions. We do not, however, have reason to concern ourselves with such issues inasmuch as we find these successions were duly accepted by all the heirs concerned.
On April 22, 1891, following the death of Urbin, Sr. and Bazelike Danos, all seven of their surviving children (including Gustave Danos, listed as a minor on June 5, 1878, upon opening of the succession of his brother, J. Guillaume Danos) executed a notarial act wherein they entered into a compromise regarding lands conveyed by their father to Henry Danos. Each of the signatories appeared through duly authorized agents and made agreements indicating in unmistakable terms they dealt with the property as their own. It is also significant that the parties categorized themselves as "heirs" of their deceased parents.
Subsequently, by notarial act dated July 2, 1895, Urbin Danos, Jr., Gustave Danos *714 and Margaret Danos Autin, sold their undivided interest in certain land (not involved herein) to their sister, Adele Danos Guidry. In the transfer it is recited that vendors acquired "from the Succession of the late Urbin Danos, Senior, in or about the year 1890."
Later on August 6, 1896, Mathilde Danos Plaisance sold her sister, Adele Danos Guidry, an undivided interest in certain lands (not involved in this litigation), said property being described as "being the share of the present vendor as one of the heirs of the late Urbin Danos, Senior."
So far as this record shows, there was no intent on the part of the heirs of decedents' estates to effect an administration of these successions. On the contrary, it affirmatively appears that following the death of Urbin Danos, Sr., his heirs accepted both successions purely, simply and unconditionally by negotiating a compromise respecting a certain transfer made by their father and subsequently selling their respective undivided interest in tracts of land acquired by inheritance from their deceased parents. Presumably there were either no debts due by decedents' estates or the heirs discharged same upon taking full charge of the successions' assets. Moreover, the validity of all such transfers was recognized by said original heirs and their descendants for more than 60 years preceding appellant's qualification as Administrator of these estates.
Appellant maintains there could be no unconditional acceptance of these estates terminating the existence of the successions because one of the heirs, Gustave Danos, was a minor. Granted the record shows Gustave Danos was a minor on June 5, 1878.
However, in the compromise agreement of April 22, 1891, Gustave Danos appears in his own right, presumably as a person then of full age. In the subsequent transfer of July 2, 1895, in which he sold his interest in certain succession assets, Gustave Danos again appeared in proper person, presumably as a person of full lawful age. In the absence of proof to the contrary, it is to be presumed Gustave Danos possessed the legal capacity to represent himself. In any event, the burden of proving the contrary rests with Administrator and no such proof appears herein.
We find no merit in the argument that La.C.C.P. Article 3393, providing for reopening of successions should be applied in this instance. The cited article reads as follows:
"After a succession representative has been discharged, if other property of the succession is discovered or for any other proper cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be reopened. The court may reappoint the succession representative or appoint another succession representative. The procedure provided by this Code for an original administration shall apply to the administration of a reopened succession in so far as applicable."
Initially we note it clearly contemplates a prior administration by an executor or administrator. Here there has been no such previous administration. Next we observe the provisions of the statute to be clearly and unmistakably permissive, not mandatory. It follows that its terms are to be invoked and applied within the sound discretion of the trial court depending upon the circumstances peculiar to each individual case.
Regarding the application of the statute in question, we note with approval the pronouncement in Molero v. Bass, La.App., 190 So.2d 141, to the effect the statute was primarily intended to provide a means for dealing with overlooked succession assets. Unquestionably in a proper case a succession may be reopened as provided by Article 3393, supra. Here, however, there is no administration to reopen as there was never any former administration. Appellant is not herein seeking to reopen an administration *715 once closed, but to provoke an initial administration 68 years after the death of the decedent who died last. No creditor has appeared to demand payment of a debt. No overlooked asset is sought to be recovered for distribution among the heirs. In the interim since the death of Urbin Danos, Sr. these successions have been accepted purely, simply and unconditionally by all the heirs who have assumed ownership and control of all succession assets and dealt with them as their own property. In the instant case we find, as did the trial court, there are no longer in existence any successions to administer.
We also find no merit in plaintiff's contention that denying the right of administration herein results in the impractical result of forcing each heir to press the instant claim individually, thus casting an unconscionable financial burden on claimants to the property in question. La.C.C.P. Article 591 permits a convenient method for representation of large numbers of litigants by means of a class action. This procedural device was available to the heirs of these estates had they so chosen. See Verdin v. Thomas, La. App., 191 So.2d 646.
Finally, we see no basis for appellant's contention La.C.C.P. Article 685 permits him to proceed herein as Administrator representing all heirs of these successions. The cited article does indeed authorize an administrator to act on behalf of all heirs. It presupposes, however, the administrator is one duly appointed and qualified according to law. Appellant's appointment being invalid, null and void, appellant acquired no rights nor authority thereunder.
Accordingly, the judgment of the trial court is affirmed, all costs of these proceedings to be paid by Guillaume Danos, Sr., Administrator of the Succession of Bazelike Mire, Wife of, and Urbin Danos, also known as Urbain Danosse.
Affirmed.