REDMANN, Judge.
This is a class action for a declaratory judgment concerning title to land sold in 1916 for city taxes to Third District Land Company and acquired from the tax purchaser by the husband of a grand-daughter of one of the tax debtors, for precisely the price of redemption but by act which took the form of a cash sale without warranty, executed six days (including a weekend) after the period for redemption had passed.
The trial court held that the heirs of the tax debtors owned the property, on the theory that the purported cash sale was but a redemption of the property which therefore restored it to pre-tax-sale ownership. We affirm.

Facts and Factual Inferences

Antoine Rovira bought the land here involved (lots 2, 3 and 6 of Section 14 in the Third District of New Orleans) for $63.68 at an 1861 auction (at which he also bought another tract in Section 5). Antoine died in 1871.[1]
On July 26, 1916, property assessed to “Heirs of A. Rovira and wife” and described as lots 2, 3 and 4 (sic) of Sec. 14, etc., was sold for 1913 taxes to Third District Land Co., Ltd. for the price of $67.50. That price included the tax of $41.80, interest $12.25, advertising $7.45, costs $1.00, and notary’s fee $5.00.
On Wednesday, August 1, 1917, by act before notary Gabriel Fernandez, Jr., Third District Land Co., Ltd. transferred lots 2, 3 and 6 (sic) to Houston L. Wood (husband of Claire Valloft), by the use of a printed form of cash sale in which the printed warranty clauses were replaced by the typewritten clause “without any warranty whatsoever”. The price of this transfer was the price for redemption of the tax sale under then-effective La.Const.1898[2] art. 233: “the price given, including costs, and twenty per cent thereon”. The $81.00 price was exactly the $67.50 price including costs at the tax sale plus 20% thereof, or an added $13.50. The date of this formal notarial act of transfer was six days (including a week-end) beyond the “space of one year” during which Const. 1898 art. 233 made tax sales redeemable; *865 however, a typewritten “JULY” in the printed form’s blank for the month bore the handwritten superscription “August”. The factual inference (presumably that of the trial judge) is therefore permissible, from all the circumstances, especially that a corporation should transfer land it bought at tax sale for its redemption price, that the agreement to transfer was made some time before the “space of one year” for redemption, and that the formal act of transfer was merely delayed by the necessary paperwork.
On August 6, 1917, the same notary Fernandez, before whom the sale to Wood was passed five days earlier, went with John Rovira, “representing the Heirs of A. Rovira and wife,” to redeem the same lots 2, 3 and 6 from a July 23, 1917 sale to A. J. Kolwe for state taxes of 1916 assessed in the name of Heirs of A. Rovira and wife. Kolwe, however, according to Fernandez’s proeés verbal, did not appear at his place of business for over an hour, as a result of which Fernandez executed and recorded a proeés verbal reciting the payment of the redemption amount to the State Tax Collector (as authorized by La.Acts 1898 No. 170 § 65). Attached to that proeés verbal was the proposed act of cash sale “without any warranty whatsoever” which Fernandez had prepared to accomplish the “redemption” from Kolwe, the same form as the no-warranty cash sale form of the Third District to Wood transfer, whose character as sale or redemption is the heart of this lawsuit. However, unlike the Third District to Wood form, this form recited the names of the heirs,[3] all of whom were said to be represented by John E. Rovira, a resident of Jefferson City, Missouri, “temporarily sojourning in New Orleans”. (John’s authority to act for the other heirs is not shown.[4]) Thus the “cash sale” attached to the proeés verbal is ambivalent in its effect on our question, tending to prove, on the one hand, that our “cash sale” for the redemption price was intended as a redemption (since that form was used in both cases) but, on the other hand, that a redemption in favor of the heirs of Rovira was not intended (since they are made the “vendees” in the Kolwe form but not in the Third District to Wood form).[5]
Other proven facts include that the subject property is listed in some and omitted in some succession proceedings of various of the heirs of Antoine Rovira; that Wood purchased several other pieces of real estate in his own name, title to none of which remained in his name at his death (near penniless); that the subject property has at all times subsequent to the Third District to Wood transfer remained assessed in the name of heirs of Rovira; and that taxes on the property have been paid over the years, although the record does not show by whom.

Preliminary

This matter was first heard by a three-judge panel of this court which proposed non-unanimously to reverse the trial court’s judgment in favor of plaintiffs. That panel ordered the matter resubmitted to a five-judge panel “as required” by La.Const.1974 art. 5 § 8(B). Defendants argue that resubmission was not required, in view of art. 14 § 23’s provision that “actions . ex *866 isting on the effective date of this constitution shall continue unaffected.” Defendants cite Traigle v. P. P. G. Industries, Inc., 3 Cir. 1975, 315 La.App. 859, so ruling, but that ruling was reversed by the supreme court, 317 So.2d 625.

Res Judicata

Defendants filed in this court an exception of res judicata or, alternatively, estop-pel by judgment, on the basis of a monition proceeding which they filed while this suit was in progress and in which they obtained a judgment against a lawyer appointed curator ad hoc for the heirs of Thompson (see n. 1) and the heirs of Rovira (alleging inability to find any of the heirs). The judgment was allegedly obtained 17 days after trial of this suit but 14 days before judgment in this suit in the trial court; however, our record does not contain any such judgment. We therefore may not consider this exception; C.C.P. 2163.

The “Cash Sale” a Redemption

The evidence supports the trial court’s conclusion that the Third District to Wood transfer was intended as a redemption. The supportive evidence includes that the price Wood paid to the corporate purchaser at the tax sale was precisely the amount required to redeem; that notary Fernandez used the printed form of a cash sale (with warranty clauses replaced by “without any warranty whatsoever”) for one other act known to be an act of redemption; that Wood was the husband of a granddaughter of one of the tax debtors and was to that extent identifiable with the tax debtors; that the Rovira heirs five days after Wood’s “purchase” redeemed the property from another tax sale; and that Wood never disposed of this property although he apparently possessed nothing but a ten-year-old automobile at his death in 1969. This evidence supports the conclusion that Wood procured the transfer from the corporate purchaser by exercising the tax debtors’ right to redeem.
We conclude that when any person who is identifiable with the tax debtors exercises the tax debtors’ right of redemption by purchasing from the tax sale purchaser at the redemption price, the purchase must be deemed a redemption for the benefit of the tax debtors, If it were the intention of the tax debtors (all the then heirs of Rovira) to donate their right of redemption to Wood, that intention could only be effected by a donation in authentic form. Moreover, the redemption just five days later by one of the Rovira family of a sale for state taxes not only casts doubt on any family intent to donate its right of redemption to Wood; it also compels the inference that the family had not abandoned (or overlooked) this property, and therefore — if, indeed, Wood fraudulently exacted a sale to himself (and, by operation of community property law, his wife) rather than also intended a redemption as did the tax-sale purchaser in selling for the redemption price — our case is distinguished from Staples v. Mayer, 1892, 44 La.Ann. 628, 11 So. 29 (in which a complete stranger’s fraud in posing as a creditor of the tax debtor and thereby obtaining a transfer to himself from the tax purchaser for the redemption price was held no fraud against the tax debtors, who had done nothing towards redemption of the property).
We first note that, unlike Hodgeson v. McDaniel, 1957, 233 La. 180, 96 So.2d 481, this is not a case of a third party’s rights being involved. Accordingly, the public records doctrine does not apply and does not make any claim “utterly null and void,” C.C. 2266.
We second observe that the parol evidence exclusionary rule is as applicable to acts under private signature as to authentic acts, C.C. 2238 (see also C.C. 2242). Thus the circumstance that the Third District to Wood transfer is by authentic act is not material to our inquiry; the parol evidence rule is no stricter because of that circumstance.
The parol evidence rule has, in any event, but limited application to our case. Plaintiffs need not show that Wood acted for them or their ancestors. All that plain *867 tiffs need show is that Wood redeemed the property rather than bought it, and it is the law that declares the result of that redemption. The principal element in the showing of redemption is not parol evidence but evidence within the very act of transfer from Third District to Wood, namely the price: the price is the price of redemption and not of sale. The second element similarly is recited in that act of transfer, namely that Wood was the husband of Claire Valloft. If (as plaintiffs’ counsel suggest) we suppose a timely suit to rescind the Third District to Wood transfer for lesion beyond moiety (C.C. 2589), would any court refuse to receive parol evidence to show that it was a redemption?
A tax sale purchaser from whom redemption is sought:
“is not called on to make a cession or transfer of his rights in favor of any other person. All that he has to do on payment [of the price of redemption] made to him is to surrender the rights which he had acquired by his purchase, leaving the result of that surrender or relinquishment to inure to the party or parties who by law would be entitled to the benefit of the same. . . .We think that anyone may, for the advantage of the owner, as negotiorum gestor, make payment for him of the redemption money, even without his knowledge. Civ. Code, arts. 2133, 2134.” State v. Register of Conveyances, 1904, 113 La. 93, 36 So. 900.[6]
As doubtless did the trial judge, we deem it established that Wood intended either to act for the Rovira family in redeeming the property for the family, or to usurp the family’s right to redeem in order to appropriate the family’s property to himself, at the same time that the family itself (unlike the tax debtors in Staples v. Mayer, supra), through John Rovira, was redeeming the property from another tax sale and therefore had not abandoned the property to the tax purchaser.
In either case, we hold that Wood’s act was one of redemption of the property from the tax sale, the result of which was to restore the property to the tax debtors.
Affirmed.
BEER, J., concurs in result.
BOUTALL, J., dissents.

. In 1882 property assessed to Rovira was adjudicated to the state for non-payment of taxes. However, the only description was “a certain portion of ground in the Third District of the City of New Orleans designated as Prairie Land in front of Gentilly Blvd.” The state in 1903 sold by the same description to Alfred Thompson, who judicially admitted (in New Orleans Lake Shore L. Co. v. Thompson, No. 15088, U.S. District Court, E.D.La., a suit over Sec. 5 in which the tax adjudication was declared a nullity) that he added lot and section numbers and acreages to the description. We hold the description inadequate to transfer title: except that it tells of land in the third district, it does not describe any particular land at all. Thompson was thus not the owner of the land at the time of its sale for city taxes in 1916. That the Rovira heirs may have earlier than 1916 abandoned their suit filed against Thompson to decree the null sale a nullity does not make the null sale valid.

. The spurious Constitution of 1913 (see State v. American Sugar Rfg. Co., 1915, 137 La. 407, 68 So. 742), art. 233, made no attempt at changing this wording.

. Included among them was Mrs. Josephine Rovira, widow of Charles Witham. Josephine was the mother of Regina Witham, wife of Louis E. Valloft, and grandmother of Claire Valloft, wife of Houston L. Wood.

. The heirs in 1901 had given a power of attorney to Louis E. Valloft to recover lands for them, but Valloft died April 11, 1914. No similar power of attorney to John E. Rovira (or to Wood) appears in the record. Valloft was married to Regina Witham, daughter of Josephine Rovira, as noted above, and their daughter Claire was the wife of Wood. Claire was 17 years old when her father died in 1914, his succession petition avers; thus she was about 20 when the Third District to Wood transfer occurred, and she was the oldest of the Valloft children.

. Kolwe later did execute a “redemption”, not in the form of a cash sale but in a typed form reciting he did “redeem, transfer, sell, convey, assign and quit claim unto the heirs of A. J. Rovira . . . any and all rights, title and interest which ... he may have had or now has by reason of said tax sale . . . .”

. See also Gulf Oil Corp. v. Olivier, 5 Cir. 1969, 412 F.2d 938, citing Louisiana authorities in concluding that a redemption by a husband benefitted his wife, who was the tax debtor.