418 So.2d 1382 (1982)
SUCCESSION OF Elizabeth Spreckles, Wife of/and Antoine ROVIRA
v.
BOARD OF COMMISSIONERS OF the PORT OF NEW ORLEANS.
No. 12963.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied September 24, 1982.
*1383 Pilie & Pilie, M. Arnaud Pilie, New Orleans, for plaintiffs-appellees.
Phelps, Dunbar, Marks, Claverie & Sims, Charles M. Lanier, Danny G. Shaw, New Orleans, for defendant-appellant.
Before GULOTTA, GARRISON and BARRY, JJ.
GULOTTA, Judge.
The co-administrators of the consolidated Successions of Elizabeth Spreckles, wife *1384 of/and Antoine Rovira filed this suit against the Dock Board for the unlawful taking without compensation of approximately 43 acres of plaintiffs' property for the construction of the Mississippi River Gulf Outlet (MRGO). From a judgment in favor of plaintiffs on the issue of liability,[1] the Dock Board appeals. We affirm.
Although the Dock Board's brief specifies twenty-one errors by the trial judge, the arguments on appeal may be grouped into the following issues:
1) Whether the Succession representatives are the proper parties to bring the action;
2) Whether the United States, rather than the Dock Board, is the proper party defendant;
3) Whether the subject property was dedicated to public use, thereby barring plaintiffs' claim;
4) Whether mandamus is a proper remedy;
5) Whether plaintiffs' suit has prescribed; and,
6) Whether the United States has gained ownership or a servitude over the property by acquisitive prescription.

BACKGROUND
In 1861, Antoine Rovira purchased 97.97 acres of marsh land in Orleans Parish. Antoine died intestate in 1871, survived by his wife Elizabeth and their eight children. In Antoine's succession Elizabeth was appointed administratrix of the succession and confirmed as natural tutrix. Although an inventory was taken and the final account and tableau of distribution were homologated, no judgment of possession was rendered.
Elizabeth died in 1903 but her succession was not opened until 1978.
In the Succession of Belle Rovira, one of Antoine and Elizabeth's children, a petition for partition of the property was filed by parties claiming to be the sole surviving heirs of Antoine and Elizabeth, and judgment was rendered in 1911 recognizing the petitioners as joint owners, decreeing a partition by licitation of the property, and ordering a private sale. One tract of land, which does not concern us, was subsequently sold. The subject property, however, was not sold.
The property, which had been assessed in the name of "Heirs of A. Rovira and Wife", was adjudicated to the City of New Orleans for non-payment of 1921 and 1929 taxes. The property was redeemed on January 23, 1957, and the redemption was registered in the conveyance office on June 22, 1960.
Between 1942 and 1944, the United States Corp of Engineers constructed the Gulf Intracoastal Waterway. Pursuant to a city ordinance, the City of New Orleans conveyed to the United States a perpetual servitude affecting 21.3 acres of plaintiffs' property through which the waterway was constructed.
In 1956, the United States Congress authorized the construction of the Mississippi River Gulf Outlet (MRGO) and required that "local interests" furnish free of cost to the United States all lands, easements, rights-of-way and spoil disposal areas for the construction of the waterway. Pursuant to the State's designation of the Dock Board as the agency to furnish easements, the City granted rights of ingress and egress over the property for the project, and the Dock Board, on May 28, 1958, conveyed the right-of-entry to the United States.
In 1957, the construction of the MRGO began and the project was opened to navigation on July 25,1963. The MRGO follows the route of and incorporates the Gulf Intracoastal Waterway across the subject property. A total of 38.48 acres of plaintiffs' property is occupied and used for the channel of the combined GIWW and MRGO, and an additional 4.42 acres has been used as permanent spoil disposal area for dredged materials. The MRGO was *1385 constructed by and is operated solely by the United States.
Neither the Dock Board, the City, nor the United States ever instituted proceedings to expropriate any portion of plaintiffs' property, and no remuneration has been made to the heirs for the taking.
On June 16,1978, the "Succession of Elizabeth Spreckles, widow of Antonio (Antoine) Rovira" was opened and consolidated with the re-opened "Succession of Antonio Rovira". Edwin J. Rovira, Jr. and Witham Dufor, the co-administrators, thereafter filed the instant suit against the Dock Board seeking compensation for the property taken. From the trial court's judgment in favor of plaintiffs on the issue of liability, defendant has appealed.

PROPER PARTY PLAINTIFF
Defendant contends the co-administrators are not the proper parties-plaintiff and the Rovira-Spreckles heirs are indispensable parties. According to defendant, the appointments of the co-administrators in 1978 were null and void since Antoine's succession was closed over 100 years earlier and the property has long since been distributed to and accepted by the Rovira heirs who were put into possession of the subject property by the judgment of partition in 1911. Defendant argues, therefore, that the Rovira heirs are the only parties who can assert the action or, alternatively, are indispensable parties who must be joined in the instant suit. We disagree.
Although it may be true that the decendants of Antoine Rovira and Elizabeth Spreckles have considered themselves as owners of the subject property by their actions through the years, the heirs have never been recognized as owners of the property by a judgment of possession in the successions of Antoine and Elizabeth. Antoine's succession, though opened, never culminated in a judgment of possession. Elizabeth's succession was not opened until 1978, when plaintiffs in this suit were named as co-administrators. Although a judgment of partition recognizing certain parties as joint owners of the subject property was rendered in the succession of Mrs. Belle Arnoult in 1911, that judgment does not recognize those parties as the sole and only heirs of decedents.[2]
LSA-C.C.P. Art. 3393(B) provides:
"B. After tacit or express acceptance by the heirs or rendition of a judgment of possession by a court of competent jurisdiction, if other property is discovered, or for any other cause, upon the petition of any interested person, the court, without notice or upon such notice as it may direct, may order that the succession be opened or reopened, as the case may be, regardless of whether or not, theretofore, any succession proceedings had been filed in court. The court may appoint or reappoint the succession representative, if any, or may appoint another, or new, succession representative. The procedure provided by this Code, for an original administration, shall apply to the administration of successions tacitly or expressly accepted by heirs and in successions where a judgment of possession has been rendered, in so far as same is applicable.
C....."
(Amended by Acts 70, No. 644, Section 1.)
Because no judgment of possession was rendered in Antoine's succession, and Elizabeth's succession had not been opened before 1978, we conclude the co-administrators of both successions were proper parties, as succession representatives, to file this suit.[3] See LSA-C.C.P. Art. 685.[4]
*1386 We are not persuaded to conclude otherwise by the decision of our brothers on the First Circuit in Danos v. Waterford Oil Company, 225 So.2d 708 (La.App. 1st Cir. 1969). In that case, the court held the appointment of an administrator invalid where the heirs had exercised ownership by their unqualified acceptance of the succession property and no judgment of possession had been rendered. The Danos court concluded that LSA-C.C.P. Art. 3393 applied to "re-opened" successions and the succession in the Danos case had never been opened.
Defendant's reliance on Danos is misplaced. When the Danos decision was rendered in 1969, LSA-C.C.P. Art. 3393 clearly applied only to "re-opened" successions. However, by amendment in 1970 the statute was changed to apply to "opened" or "re-opened" successions. Accordingly, under the present wording of the statute, the succession representative is the proper party to assert a claim in an opened or re-opened succession where good cause has been shown. We point out further that we question the result reached in the Danos decision and, therefore, do not choose to follow it.
Moreover, as a matter of judicial economy, the filing of the instant action by the succession representatives is the most prudent means of assuring the interests of all the Rovira heirs are protected.

PROPER-PARTY DEFENDANT
We likewise reject defendant's argument that the Dock Board is not the proper-party defendant.
In response to the argument that the United States is the proper party or an indispensable party, the trial judge concluded that the Dock Board had been designated by the State to furnish to the United States land, easements and rights-of-way for the construction "free of cost to the
United States ...." In reasons overruling the exceptions, the trial judge stated:
"These exceptions were overruled because the Court feels that were the Corps of Engineers named as a defendant it would simply call the Dock Board under the indemnity agreement existing between those parties then stand aside and let the litigation proceed between the parties presently before the Court."
It is clear from the documents ordering and empowering the Dock Board to acquire the rights-of-way that the Dock Board is the public body that was the "taker" of the land used in construction. The instant suit is a claim for compensation for the lands taken. The dispute is between plaintiffs and the Dock Board as "taker". It is of no moment that the United States, as ultimate recipient of the lands taken, constructed the waterway and now operates it. It is the Dock Board, not the United States, that must respond to the claim asserted by plaintiffs.
LSA-C.C.P. Art. 641 defines indispensable parties as "... those whose interests in the subject matter are so interrelated and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action."
Defendant relies, in support of its contentions, on Haeuser v. Board of Commissioners of the Port of New Orleans, 170 So.2d 728 (La. App. 4th Cir. 1965), and Vuljan v. Board of Com'rs of Port of New Orleans, 170 So.2d 910 (La.App. 4th Cir. 1965). We distinguish these cases. In Haeuser, plaintiff-landowners sought damages resulting from the denial of access to their property caused by the construction of the MRGO. In Vuljan, plaintiff sought damages for the destruction of his oyster bed leased within a mile of the MRGO. In both cases, this court held that plaintiffs' damages did not result from the "taking" by the state but *1387 resulted from the construction of the MRGO, (over which the United States had sole jurisdiction and control) and that the United States was the proper-party defendant.
In our case, plaintiffs' claim is not for property damage occasioned by construction, but for compensation for the "taking" of the property. Because the Dock Board was the body designated by the state to acquire the rights-of-way and easements, we conclude the Dock Board is the proper-party defendant and the United States is not an indispensable party.

DEDICATION TO PUBLIC USE
In brief and oral argument, plaintiffs concede that the 21.3 acres taken for the GIWW has been continuously used as a public waterway in excess of thirty years, and they do not assert any claim for compensation for that acreage.
In connection with the claim for the remaining 21.60 acres, the Dock Board contends that even if plaintiffs can bring an action, they are not entitled to compensation since the land taken for the GIWW and MRGO has been dedicated to public use.
In support of its position, the Dock Board relies on Emery v. Orleans Levee Board, 207 La. 386, 21 So.2d 418 (1945) and Wood v. Bd. of Com'rs. for Pontchartrain, Etc., 338 So.2d 744 (La.App. 4th Cir. 1976), writ denied, 341 So.2d 5 (La. 1977). In the cited cases, property used for public construction had been adjudicated to the state for unpaid taxes and had been redeemed by the tax debtors. In both cases, the courts held that the property had been dedicated for public purposes and removed from commerce, and, since the property in dispute had not been privately owned at the time it was applied to public use, plaintiffs were not entitled to compensation for the taking.
The Dock Board argues in our case the City had acquired the property for non-payment of taxes for the years 1921 and 1929 and was the proper party to grant the right of entry to the Dock Board who in turn conveyed it to the United States in 1957-58. According to the Dock Board, the subsequent redemption of the property by the Rovira heirs, which was registered on June 22, 1960, is without effect. We disagree.
Our property was adjudicated by tax sale to the Third District Land Company for non-payment of taxes due the city for 1913. By act of sale on August 1, 1917, the Third District Land Company conveyed the property to Houston L. Wood, husband of one of the heirs of Antoine Rovira, which act of sale was registered in the conveyance office. In Dufour v. Wood, 346 So.2d 863 (La.App. 4th Cir. 1977), we held that Wood had redeemed the property. Implicit in our decision in Dufour, is a finding that Houston L. Wood was, at all pertinent times subsequent to 1917, the duly registered owner of the property according to the conveyance records. According to the public records then, the property was under private ownership when the request of entry was granted by the City to the Dock Board. Clearly, the dedication doctrines of the cited cases do not apply to our case.
We recognize that by an instrument registered in the conveyance office in 1932, the property was adjudicated to the City for non-payment of 1929 taxes. Nonetheless, even though the redemptions of this tax sale and another for non-payment of taxes in 1921, were not recorded until 1960, Houston Wood appeared as a record owner in 1957 and 1958. As pointed out by the trial judge in his written reasons, title to the property was in a "state of utter confusion" and the Dock Board was proceeding at its own risk in acquiring property whose title was so clouded.
It is well settled that the conveyance records constitute notice to third-party purchasers of ownership in the registered owner. Wells v. Joseph, 234 La. 780, 101 So.2d 667 (La. 1958); Meares v. Pioneer Production Corp., 382 So.2d 1009 (La.App. 3rd Cir. 1980), writs refused, 392 So.2d 667 (1980). In our case, an examiner of the public records would have found Houston Wood as a registered owner according to the conveyance records. Under such circumstances, we cannot conclude a dedication *1388 was made by the City to the Dock Board.

LIBERATIVE PRESCRIPTION
Alternatively, defendant asserts 1, 2, 3 and 10 year prescription. According to the Dock Board, the prescriptive periods have accrued between the time the heirs received actual or constructive notice and the time of the filing of the suit in 1978.[5] The most serious attack is that relating to two and three year prescriptions.
It is true, as pointed out by the Dock Board, that LSA-R.S. 19:2.1(B) provides for a two-year prescriptive period for all claims for the value of property or damages to an owner caused by expropriation, and the period commences on the date on which the property was actually occupied and used for the purposes of expropriation. It is true also that LSA-R.S. 13:5111 provides for a three-year prescriptive period in actions for compensation for property taken by the state, parish, municipality or other political subdivision, which runs from the date of the taking. It is also clear in our case that the property was taken in 1958 and the suit was filed some twenty years later in 1978.
However, it is well settled that the commencement of the running of prescription presupposes notice, constructive or actual, to the owners. See Cartwright v. Chrysler Corporation, 255 La. 598, 232 So.2d 285 (1970); Powell v. Department of Highways, 383 So.2d 425 (La.App. 4th Cir. 1980); Chenevert v. Louisiana State Dept. of Highways, 345 So.2d 960 (La.App. 4th Cir. 1977). In written reasons, the trial judge in addressing the notice question, stated:
"Defendant argues the Cartwright case, 232 So.2d 285 regarding constructive notice should control but where the aerial photographs of the canal and the surrounding property show the entire area to be nothing more than inaccessible swampland and where the property was owned by numerous heirs who had inherited fractional interests from generations past and these facts were discernible from the public records, governmental agencies have a greater duty to notify the property owners directly than were the property located on the suburb of a metropolitan area and legal advertisements cannot be relied on under these circumstances."
We are in accord and adopt those reasons as our own.
Accordingly, we conclude no notice was given to the heirs which would commence the running of prescription.
We are aware of the stipulations in the record that in 1971 attorneys for heirs of Antoine Rovira and Elizabeth Spreckles Rovira and a co-administrator of the Succession of Elizabeth Spreckles Rovira, who was a representative of the class comprising all of the heirs of the decedents, knew of the construction and existence of the MRGO across the property and that a portion of these lands had been taken. However, we cannot conclude that a mere stipulation of attorneys or a co-administrator can bind all of the heirs, known or unknown, where no judgment has been rendered recognizing these owners as the sole and only heirs at law of decedents. The stipulation notwithstanding, we find no error in the trial court's conclusion that no notice had been given to the "numerous heirs".
Under the circumstances, we find no merit to the Dock Board's argument regarding liberative prescription.

ACQUISITIVE PRESCRIPTION
Defendant further contends that plaintiffs have no right to maintain the action against the Dock Board since the United States by its construction and operation of the MRGO has acquired the property by ten-year acquisitive prescription.
LSA-C.C. Art. 742 provides:

*1389 "The laws governing acquisitive prescription of immovable property apply to apparent servitudes. An apparent servitude may be acquired by peaceable and uninterrupted possession of the right for ten years in good faith and by just title;...."
According to defendant, the waterway is an "apparent" servitude that has been in continuous existence and operation since constructed in 1958-59, or at least since 1963 when it was opened to traffic. Defendant argues the "good faith" and "just title" requirements were met when the United States acquired from the Dock Board the right-of-entry granted by the City of New Orleans, the record owner. Because action was not taken until 1978, defendant claims the ten-year prescriptive period has elapsed.
We reject this contention. Neither the Dock Board nor the United States obtained "just title" to the property. The "right of entry agreement" between the City and the Dock Board is not a deed translative of title. The agreement, in pertinent part, merely provides that:
"... The City of New Orleans does hereby grant to the Board of Commissioners of the Port of New Orleans the right of ingress and egress over City property for the purpose of the Mississippi River Gulf Outlet. The above said Commissioners are authorized to proceed with whatever must be done to bring this project to reality.
* * * * * *
It is agreed that negotiations will be entered into promptly for the acquisition in fee simple title of the lands upon which this right of entry is granted under mutually satisfactory terms, or if mutually satisfactory terms cannot be agreed upon, that Board of Commissioners of the Port of New Orleans will take steps to acquire title by condemnation procedure.
It is further agreed that the value of the lands to be acquired for the State of Louisiana shall not be considered either depreciated or enhanced by any dredging or deposit of spoils performed by the United States of America, or by any mucking out by the Board of Levee Commissioners of the Orleans Levee District, the value of said lands to be considered as remaining as it is at present and to be arrived at as though no dredging or deposit of spoils or mucking out had taken place."
Just title has been defined by our courts as title that purports to convey ownership, is translative of property, and, on its face, is apparently valid so as to induce the possessor to believe that it is a perfect one. LSA-C.C. Arts. 3483, 3484, 3485, 3486. Callahan v. Authement, 99 So.2d 531 (La.App. 1st Cir. 1957); Barrois v. Legendre, 127 So.2d 790 (La.App. 4th Cir. 1961). Considering those cases, together with the right-of-entry agreement, we cannot conclude the agreement constitutes a just title as contemplated by the Code. Having so concluded, we find no merit to the Dock Board's claim relative to the ten-year acquisitive prescription.
Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
NOTES
[1] The matter has been heard only on the question of liability. We only decide the liability question.
[2] Although a number of individuals have been recognized as fractional owners of the subject property by judgments of possession in the later successions of various apparent heirs of Antoine Rovira and Elizabeth Spreckles, those judgments of possession presuppose the decedents' interests were acquired from Antoine Rovira's succession.
[3] While defendant's appeal was pending in this Court, the Rovira heirs filed a motion to be substituted as parties-plaintiff. Having concluded that the succession representatives are the proper-parties-plaintiff to prosecute this action without the necessity of joining the individual heirs, we do not consider the motion to substitute.
[4] LSA-C.C.P. Art. 685 reads as follows:

"Art. 685. Succession
Except as otherwise provided by law, the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration. The heirs or legatees of the deceased, whether present or represented in the state or not, need not be joined as parties, whether the action is personal, real, or mixed."
[5] In connection with the one-year prescriptive period, the Dock Board relies on LSA-C.C. Art. 3534, which provides a one-year prescriptive period in mandamus suits. Because we conclude plaintiffs are entitled to be compensated for the taking by the Dock Board, we find no necessity to discuss whether or not plaintiffs have a right of mandamus.