162 So.2d 419 (1964)
LINCOLN PARISH SCHOOL BOARD, Plaintiff-Appellee,
v.
RUSTON COLLEGE et al., Defendants-Appellants.
No. 10131.
Court of Appeal of Louisiana, Second Circuit.
February 13, 1964.
Rehearing Denied April 13, 1964.
Writ Refused May 27, 1964.
*421 George B. Holstead, Ruston, curator ad hoc for Ruston College, defendant-appellant.
Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for Mary Frances Duvall et al, Robert E. Russ heirs, defendants-appellants.
Ragan D. Madden, A. K. Goff, Jr., Ruston, for Lincoln Parish School Board, plaintiff-appellee.
Before HARDY, GLADNEY, and AYRES, JJ.
AYRES, Judge.
This is an action for a declaratory judgment wherein plaintiff, Lincoln Parish School Board, seeks to be decreed the owner of Square, or Block, 20 of the Town (now the City) of Ruston, Louisiana.
Made defendants are Ruston College, a defunct Louisiana corporation represented herein by a curator ad hoc, and the heirs, 36 in number, of one Robert E. Russ.
Plaintiff alleged that it was the owner of the aforesaid property "by good, valid, and merchantable title" and, moreover, that, as owner, it had been in actual physical possession of said property continuously and without interruption for more than 60 years.
The Russ heirs first excepted to plaintiff's petition as disclosing no right or cause of action, which exception was predicated upon the proposition that a school board may not acquire property by the acquisitive prescription of 30 years. Against this exception, plaintiff urged a motion to strike on a basis that the Russ heirs were without interest inasmuch as their ancestor in title, Robert E. Russ, had, during his lifetime, divested himself of title to the property. The exception and motion were referred to the trial of the merits of the case.
Thereafter, the Russ heirs, reserving their rights under the exception, answered and denied plaintiff's right to recover, and, in reconvention, claimed title to the property through inheritance from Robert E. Russ and sought a declaratory judgment decreeing the property to be owned by them.
Ruston College, through its curator ad hoc, denied generally plaintiff's allegations, as well as its right to a declaratory judgment, and urged, as against the Russ heirs, prescriptions of five, ten, and thirty years under LSA-C.C. Arts. 2221, 3542, 3544, and 3548, so far as their demands seek an avoidance or rescission of a donation inter vivos of the property from Robert E. Russ to Ruston College. A similar plea, predicated upon the same codal authorities, was urged by plaintiff school board against the rights, if any, of the Russ heirs to avoid or rescind the donation referred to or the rights of the heirs to claim title to the property. These pleas were likewise referred to the merits.
On trial of the merits, plaintiff, Lincoln Parish School Board, was recognized and decreed the owner of the property "free from any right, title, interest, or claim thereto, of or by defendants." The reconventional demands of the Russ heirs were therefore rejected, as was their third-party proceeding against Ruston College. From the judgment thus rendered and signed only the Russ heirs appealed.
Complicated factual as well as novel legal issues are involved in this litigation. Whether plaintiff school board may establish or acquire title by the prescription of 30 years is apparently of first impression *422 before the appellate courts of this State. A brief recital of the facts is deemed a prerequisite for an understanding of the issues as they are resolved.
Robert E. Russ was the ancestor in title of all claimants to the property herein concerned. Under date of July 6, 1887, by notarial act, Russ acknowledged and declared:
"* * * that for and in consideration of the interest and solicitude he has and entertains for the cause of education and for the advancement of the `Ruston College' and for other just and good causes he has donated bequeathed assigned bequeathed set over and delivered with full warranty of title unto Thomas C. Standifer, resident of Ruston, La., President of the Board of Trustees of Ruston College, for the use and exclusive benefit of the Ruston College, the following described lot of land, situated in the town of Ruston, La., and described as follows, Square No. (20) Twenty bounded on the East by Trenton Street, on the West by Monroe Street, on the North by Florida Avenue and on the South by Georgia Avenue according to the plat of said town of Ruston * * *"
Ruston College functioned until 1895. Its last graduation exercises were held that year. From a date thereafter, not definitely established, until the year 1910, a public school was conducted by plaintiff or its predecessor in an old frame building located on the former college site. The building burned in 1910.
Proceedings to rebuild the school were thereafter immediately initiated. Pursuant to a petition of the property taxpayers of the school district, a meeting of the Lincoln Parish School Board was called and held on November 28, 1910. A resolution was adopted calling an election for December 31, 1910, submitting to the property taxpaying electors (1) a proposition to vote a special tax of 3½ mills on all property in School District No. 1 of Lincoln Parish, to run for a period of 38 years, and (2) a proposition to incur debt and issue bonds in the sum of $65,000.00, secured by a pledge of said tax, for the purpose of constructing a public school building on the site of the "present public school building," the "title of which shall vest in the public." The election was carried, the bonds were issued and sold, a contract was let, and the school building was erected in 1911 by the Lincoln Parish School Board, on the public school site, for a price of $55,000.00, subject to additions and deductions provided for in the contract. The building thus erected now stands on the property referred to in the proceedings as the "public school site," and, on the premises and in the building constructed, as aforesaid, the Ruston High School was conducted until the 1940s. The property was improved as late as 1947 and has been in the possession of the plaintiff school board and used for school purposes since the school board first had possession. In fact, it was stipulated:
"* * * that during the year 1911 the old Ruston High School building was constructed on the premises herein involved and which building remains on said premises by Lincoln Parish School as the owner of said property and that since the year 1911 Lincoln Parish School Board has actually, corporeally and physically possessed said property as the owner thereof, which possession has been public and unequivocal, continuous and uninterrupted during all of said time under the title of owner by Lincoln Parish School Board." (Emphasis supplied.)
The word "title" was corrected by a later stipulation to read "claim." It was further stipulated:
"* * * that Robert E. Russ, the original donor of the property to Ruston College, lived continuously in Ruston until the time of his death on January the 9th, 1902 and that during that period of time he was active and was inactive only for approximately a month prior to his death."
*423 Thus, the record establishes the necessary possession in the Lincoln Parish School Board for a period of time greatly exceeding the requisite term to establish or acquire title by prescription. The question is,
May the school board make use of its possession of the property as owner for a time exceeding 50 years to establish or to acquire title to the property forming the subject matter of this litigation?
The general rule is that the ownership of immovables is prescribed for by 30 years without any need of title (LSA-C.C. Art. 3499) under continuous, uninterrupted, public, and unequivocal possession as owner (LSA-C.C. Art. 3500). Prescription in general is a manner of acquiring the ownership of property by the effect of time and under conditions regulated by law (LSA-C.C. Art. 3457). Prescription by which the ownership of property is acquired is a right by which a mere possessor acquires such ownership by the continuance of possession during the time fixed by law (LSA-C.C. Art. 3458).
Prescription is therefore a means of acquiring ownership of a thing by possession prolonged during a fixed period of time. As applied under the civil law, the required possession may or may not be preceded by a written instrument evidencing a title to the property or thing. However, the word "prescription" is from the Latin "pre" and "scriptio," meaning a prior writing. Thus, ownership by prescription may be based upon the existence or upon a presumption of a written title or former grant, as well as upon adverse possession not attendant by either title or deed. This principle is recognized in the civil law. For instance, Planiol, Traité Élémentaire de Droit Civil, Vol. 1, Part 2, No. 2645, p. 571, concerning the importance of prescription in the acquisition of property, recites:
"The Ancients said of prescription that it was the patroness of the human species. The Exposé des motifs of the title `of Prescription' says that `of all the institutions of Civil Law, it is the one that is the most necessary to society.' Nothing is truer. How did `A' become owner? Because he acquired the thing by purchase, by succession. But `A' could not have acquired the property under a title if his author had not owned it. The same question arises, in the same terms, for all the successive possessors of the thing. If one in the series had not been owner, all those who followed him could not have become owner. Prescription does away with this difficulty, which would be insoluble. Possession of a certain number of years suffices. It may also be assumed that the title deed of acquisition of the present possessor or of one of his predecessors has been lost. Prescription comes to the aid of the possessor.
"Acquisitive prescription thus plays an important social role. Without it no patrimony would be safe from unforseen [sic] revindications. It is certain that there are times when prescription may avail a possessor without title and in bad faith. It would then afford a shield to a spoliator. But such instances are of rare occurrence. And it would happen even more infrequently that the owner despoiled through prescription had not been guilty of negligence. Why did he remain for such a long time without performing an act of possession as regards his thing or without laying claim to it? A sufficient delay is allowed him within which to learn of the usurpation committed against him and in which to protest against it. Inequitable results that may thus arise are more than offset by the decisive advantages that prescription produces every day." (Emphasis supplied.)
As to the probability or improbability that the school board had a title to the property which was lost or misplaced, it may be appropriate to observe that the record throughout refers to the property as *424 the "public school property" and the proceedings recite that "title to the property shall vest in the public." That the title to the property be vested in the public was a requirement of law then in effect. Act 256, § 2 of 1910.
Moreover, as heretofore observed, bonds in the sum of $65,000.00 were issued and sold to secure funds for the payment of the construction of the school building. These bonds were payable over a period of 38 years and bore 5% per annum interest. Where the petition of the taxpayers requesting an election to authorize the incurring of this indebtedness specifically directed the board's attention to the requirement that title to the property be vested in the public, as did the proceedings in their several stages, and in view of the legal mandatory requirement that the title to the property be vested in the public, it appears most probable that the school board had title to the property. Under these facts and circumstances, it is safe to assume, under the rule heretofore mentioned, that the title deed of plaintiff board has been lost.
This rule is applied in other jurisdictions under the term "presumption of a lost grant." For instance, in 3 Am.Jur.2d, p. 81, "Adverse Possession," § 3, it is said:
"Title by adverse possession is often said to rest upon a presumed grant or conveyance, or on the presumption of a lost grant. Where it is shown that one has for a long period of time held an uninterrupted possession of land while exercising proprietary rights, the law raises a presumption of an ancient or lost grant of title which may be encountered and rebutted by contrary presumptions or by proof of facts inconsistent with its supposed existence, such as proof that the use was by permission or in some other way not inconsistent with the rights of the owner of the land. At the end of the statutory period, the presumption of fact that there was a grant crystallizes into a rule of law and becomes irrebut-table. Thus, many cases state that where property is maintained in adverse possession for the statutory period, the law presumes a conveyance on grounds of public policy, and this includes the presumption of all that is essential to give a conveyance effect. It extends to all that may be necessary to the repose of the title, and is not limited to a presumption of only one step in the title. The presumption is one of policy as well as convenience, and is necessary for the peace and security of society; it is founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur unless there was a transmutation of title to, or an admission of an existing title in, the party in possession.
The presumption of a lost grant to land recognizes that lapse of time may cure the neglect or failure to secure the proper muniments of title, even though the lost grant may not have been in fact executed. It has been claimed, however, that it is unnecessary to resort to presumption, because the mere fact that adverse possession has been maintained for the statutory period is in itself sufficient to meet every legal requirement for the protection of the new owner." (Emphasis supplied.)
The term "presumption of a lost grant" refers to the presumption which arises from the long-continued, peaceful possession of property that a conveyance had in fact been executed but had been lost, and that such possession of real property, accompanied by corroborating circumstances, gives rise to a presumption of a lost grant to the occupant or to one through whom he claims.
Thus, as recited in 2 C.J.S. Adverse Possession § 231b., p. 875 et seq.,
"The presumption of a lost grant is a rule of law adopted by the courts for the repose of the title of the person *425 in possession; in theory, it is a legal fiction intended to meet the difficulty of contemplating the creation of a valid title to land by something other than a deed; it assumes a grant of the title asserted, and not the former existence of a deed which does not create or convey it.
"The presumption is intended to supply the place of positive proof, where an ancient title deed has been lost, or where a fact is to be established which occurred at so remote a period that no contemporary is living to testify as to its existence. It is justified by the infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of quieting title by supporting long and uninterrupted possession and use, and is founded on the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of an existing adverse title in, the party in possession.
"Because an element of public interest is involved it has been held that there is more reason for the presumption in a case affecting the interests of thousands of people in very valuable land than where the land is unimproved and of little value, and the rights of only a few parties are involved."
The presumption of a lost grant which arises to support long-continued, undisturbed possession of property, accompanied by other corroborative circumstances, is not limited to a presumption of only one step in the title, but it is very broad in scope and embraces the existence, at one time, although they cannot be found, of all formal instruments and records of title. It embraces whatever grant, conveyance, or other written evidence may be necessary to the repose of a title to the absolute assurance and quietude of the possession, such as that claimant's entry was under a purchase and that the grantor had a lawful right to convey. Therefore, in the absence of rebuttal, the presumption of a lost grant operates effectively to quiet or confer title. The burden of rebutting such presumption is on the one denying its applicability under the circumstances of the case. 2 C.J.S. Adverse Possession § 231, p. 876 et seq.
No proof was offered in rebuttal of the presumptions in favor of plaintiff school board's title.
Furthermore, a school board is a body corporate created by the State, with power to sue and to be sued (LSA-R.S. 17:51). It is vested with the express power to "receive land by purchase or donation" (LSA-R.S. 17:81), and to sell, lease, or otherwise dispose of school sites which are not used or needed (LSA-R.S. 17:87.6). Therefore, a school board is a separate, legal entity from the State, vested with the power of acquiring property and of alienating the same, and with the right to sue and to be sued. Defendants contend, however, that a school board possesses only limited or restrictive powers. Even so, school boards are charged by law to acquire sites for and to secure the erection of school buildings and to establish public schools. In addition to the powers expressly granted, they have such implied or additional powers as are necessarily and properly incident to the performance of their statutory duties. Watkins v. Ouachita Parish School Board, 173 La. 259, 136 So. 591.
In this regard, it may be noted that the statute LSA-R.S. 17:81 provides that school boards "may receive land by purchase or donation" for school purposes, recover for any damage that may be done to the property in their charge, change the location of a school, sell or dispose of the old site or of any site which, for any reason, can no longer be used or which is unused and unnecessary or unsuitable for school purposes. The limitation or restriction upon the powers of a school board obviously relates to the purpose for which *426 such property may be acquired, and not to the manner in which it may be acquired, for the word "may" is permissive (LSA-R.S. 1:3).
The power to acquire by prescription is, indeed, a necessary adjunct to the power to acquired by "purchase or donation." It is inconceivable that a school board, with the power to acquire property by purchase or donation, would not have the authority to acquire by prescription. The codal provisions to which reference has been made make no distinction as to persons or corporations which may acquire by prescription. The words "mere possessor," as embodied in LSA-C.C. Art. 3458, embrace the State and include all natural and artificial persons, such as individuals, corporations, bodies, corporate, and all other legal entities. No restriction or prohibition is directed against either. The constitutional provision relative to prescription as applies to the State prohibits the running of prescription against the State.
LSA-Constitution, Art. 19, § 16. There is no prohibition in the organic law prohibiting the running of prescription in favor of the State or in favor of political corporations.
If public bodies or political corporations were prohibited from acquiring by prescription, such defects as may exist in a title to property acquired by purchase or donation could never be cured by possession of any nature, extent, and duration whatsoever. Such a conclusion would be contrary to sound reason and logic and would be opposed to the clear and unambiguous language of LSA-C.C. Art. 3458, the provisions of which are extended to any "mere possessor," and would subject to attack the titles to all school board properties regardless howsoever long such properties may have been possessed.
As heretofore observed, prescription cannot run against the State. Nevertheless, in the absence of any express provision in the Constitution and Statutes authorizing the State to avail itself of the benefits of prescription acquirendi causa, it has been firmly recognized that such prescription does run in favor of the State. In Housing Authority of New Orleans v. Banks, 224 La. 172, 69 So.2d 5, 8, the court stated:
"The self evident truth is that the sovereign can prescribe against, but prescription cannot run against the State. Article XIX, § 16, La.Const. of 1921."
A similar terse statement is made in Ward et al. v. South Coast Corporation et al., 198 La. 433, 3 So.2d 689, 692:
"Prescription runs in favor of the state. Quaker Realty Co., Ltd., v. Purcell, 134 La. 1022, 64 So. 894; Norgress v. E. B. & S. P. Schwing, 128 La. 1040, 1043, 55 So. 667."
While the cases quoted relate to tax sales and proceedings, no distinction is observed in the principle of acquiring by prescription.
In Haas et al v. Board of Com'rs of Red River, Etc., et al, 206 La. 378, 19 So.2d 173, the sole issue presented by the defendants was whether acquisitive prescription under LSA-C.C. Art. 3478 runs against the levee district, an agency of the State, in view of the fact that the State itself is immune from the running of prescription against it. The court there pointed out that it had been held that, while a levee district was an agency of the State, performing public service, it was subject to a plea of prescription liberandi causa. Board of Com'rs of Caddo Levee Dist. v. Pure Oil Co. et al., 167 La. 801, 120 So. 373; Board of Com'rs of Tensas Basin Levee Dist. v. Earle et al., 169 La. 565, 125 So. 619. See, also: Graham v. Tignor et al., 23 La.Ann. 570; State v. Heirs of White, 23 La.Ann. 733; Board of Com'rs of Port of New Orleans v. Toyo Kisen Kaisha, 163 La. 865, 113 So. 127; Board of Levee Com'rs of Orleans Levee Dist. v. Whitney Trust & Savings Bank, 171 La. 28, 129 So. 658. *427 No distinction was made in the principle involved because pleas of prescription liberandi causa were involved in the cases cited, whereas a plea of prescription acquirendi causa was presented in the Haas case. In this connection, the court, in the Haas case (206 La. 378, 19 So.2d 173, 174), made this observation:
"An examination of the first two cases cited shows that the Levee District sought to have the Court declare them exempt from prescription as agencies representing the State and performing public functions. The Court specifically answered this question by stating [169 La. 565, 125 So. 620]: `There can be no mistake as to the ruling of the court in the Pure Oil Case, supra. It was that prescription did run against a levee board as a separate entity from the state, vested with the power of alienation and with the right to sue and be sued.'
"It is said that the above authorities are unsound and should be overruled and if not overruled, confined to prescription liberandi causa only and not extended to acquisitive prescription. The basis of the decisions is that a Levee District is a corporation so distinct and independent that it is a separate entity from the State. No reasons are assigned why the jurisprudence should be disturbed except the same ones which were rejected by the Court in considering those cases. On the other hand, the record in the instant case establishes that the Town of Krotz Springs is located wholly on the lands in controversy and that homes, churches, schools and places of business have been erected and maintained thereon and the Board itself has had the property assessed for taxes, which were paid by the claimants and their authors in title for many years. While it is true that this Court has said it would overrule a decision or decisions inadvisedly made and working injuriously to public interest, in the present case more harm would result in overruling the cited authorities than by upholding them for it is obvious that injustice and confusion would result therefrom. Miami Corp. v. State of Louisiana, 186 La. 784, 173 So. 315; Reeves v. Globe Ind. Co., 185 La. 42, 168 So. 488."
By analogy, acquisitive prescription would run against a school board, a body corporate with a separate entity from that of the State, vested with the power of alienation and the right to sue or be sued. In the absence of a prohibition, a school board has the power to acquire in the same manner, by prescription.
As a general rule, all persons, artificial as well as natural, may acquire title by adverse possession. 3 Am.Jur.2d, "Adverse Possession," § 129, p. 216; 2 C.J.S. Adverse Possession § 6, p. 517.
The public may obtain title by adverse possession to that which it has occupied during the full statutory period. Such acquisition would have to be through a public or governmental entity. 3 Am.Jur.2d, "Adverse Possession," § 139, p. 225, states:
"* * * Clearly, title by adverse possession may be acquired by the United States, or by a state, county, city or other governmental entity."
And, in § 141, p. 226, it was stated:
"A school district is a body corporate and can acquire title to land by adverse possession. The test of adverse use by a school district is its manifest intention initially and subsequently to hold the property in nonrecognition of those against whom it is claimed. While the character and quality of the use of land by a school district are naturally not of the same type and character that individuals might normally make of land, where it is the character of dominion and use normally exercised and made of property by a school district, it *428 will suffice to support a claim of title by adverse possession in the school district. In the absence of a license or an agreement granting the right of occupancy, the placing of a school building and other necessary appendages on the land of another, building a fence around it and conducting school and social functions thereon, is evidence of adverse and hostile possession under which title may be claimed after the lapse of the statutory period."
No authorities are cited that would support a contrary view.
The cases relied upon by the defendants concern the right of municipal corporations to acquire rights of way by acquisitive prescription. The facts involved generally relate to passages such as a street, alley, or roadway. The law is clear that a servitude cannot be acquired by the mere use of a road by the traveling public. LSA-C.C. Art. 766 provides that continuous non-apparent servitudes, and discontinuous servitudes, whether apparent or not, can be established only by a title. The cases cited did not relate to the right or authority of a municipality to acquire title to land physically and corporeally possessed by the municipality and, hence, are inapplicable to the situation existing here.
For the foregoing reasons, the conclusion is inescapable that the prescription pleaded was appropriate and that plaintiff has established title to the property herein involved by 30 years' acquisitive prescription. This conclusion makes it unnecessary to consider any other issues presented by any of the parties to this litigation.
Therefore, for the reasons assigned, and in compliance with C.C.P. Art. 1919,
It is Ordered, Adjudged, and Decreed that there be judgment herein in favor of plaintiff, Lincoln Parish School Board, and against the Russ heirs defendants, namely, Lela M. Russ Howze, Edwina Russ Wilkins, Roberta Montez Russ Caraway, Lola Elizabeth Russ Bailey, Freddie Jimerson Bailey, Aileen Covington, E. N. Covington, Emma Nettie Jackson Bolin, Trebie Jackson Anders, Arthur Wright, Frances Wright Leiper, G. P. Russ, Jr., Mary Russ Sneed, Mary Frances Russ Duvall, Lucille Russ Robertson, Clarisse Russ Thaxton, Charles R. Russ, Jr., John Alexander Jimerson, Jr., Mary Elizabeth Jimerson Fisher, R. M. Covington, Yoland Covington Tromater, Harold A. Covington, Mattie Jackson Charlet, Russie Jackson Watts, Wallace Jackson, Cassyl Jackson LeBlanc, Maurice S. Rudy, Mattie May Rudy Berry, Dora May Barrett, Eleanor May, Jessie Wright Stockard, Norma Russ Love, Robert Edward Russ, Beatrice Russ Rogillio, Mae Russ Curtis, and Armand G. McHenry, Jr., and against Ruston College, recognizing and decreeing plaintiff, Lincoln Parish School Board, to be the owner, by valid title, of the following-described property situated in Ruston, Lincoln Parish, Louisiana, to wit:
All of Square No. Twenty (20) of the Town (now City) of Ruston, Louisiana, bounded on the east by Trenton Street, on the west by Monroe Street, on the north by Florida Avenue, and on the south by Georgia Avenue, according to the original plat and survey of said Town of Ruston on file and of record in the office of the Clerk of Court for Lincoln Parish, Louisiana,
free from any right, title, interest or claim thereto of or by defendants, costs of court, including the cost of this appeal, to be paid by the hereinbefore-named Russ heirs; and
Accordingly said judgment is affirmed.