STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 10-1062


RICKO CONSTRUCTION, INC.

VERSUS

OWEN DUBOIS, ET AL.


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-FIFTH JUDICIAL DISTRICT COURT
PARISH OF GRANT, NO. 19,802
HONORABLE WARREN DANIEL WILLETT, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**BILLY HOWARD EZELL**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Billy Howard Ezell, and Shannon J. Gremillion, Judges.


**AFFIRMED.**


**Norval J. Rhodes**
**206 Hall Street**
**Montgomery, LA 71454**
**(318) 627-5563**
**Counsel for Defendants/Appellees:**
**Owen Dubois**
**L. V. Fredieu Bryant**

**Michael John O'Shee**
**Randall Lee Wilmore**
**Gold, Weems, Bruser, Sues & Randell**
**P. O. Box 6118**
**Alexandria, LA 71307**
**(318) 445-6471**
**Counsel for Plaintiff/Appellant:**
**Ricko Construction, Inc.**

**EZELL, JUDGE.**

Ricko Construction, Inc. appeals a trial court judgment dismissing its claim to be recognized as owner of a disputed tract of property in Grant Parish along Sugarhouse Bayou. Ricko filed suit for damages to its property, claiming ownership of the property by thirty-years acquisitive prescription.

## FACTS

In 1972, L.V. and Earl Bryant purchased some property in Grant Parish located along Sugarhouse Bayou and Louisiana Highway 8. The Bryants lived in a house located on the property while they built a house on Patterson Road. In 1974, the Bryants sold 0.48 acres to Cassie and O.D. Slayton. This portion of the property contained the house. Mr. Bryant was Mr. Slayton's uncle. The Bryants continued to own the property on the eastern boundary. In 1997, after her husband died, Mrs. Slayton moved out. At the time, their son Charles Slayton continued living in the home. During the years 2000-2002, the house was vacant. Within a year, the house was demolished.

In 2004, another son, Willie Slayton, bought the property from his mother. At that time he would bring a travel trailer to use on the property. In April 2007, Willie leased the property to Ricko and eventually sold the property to Ricko in November 2008.

In September 2007, Owen Dubois, who owned the property across the street and to the west of the disputed tract, erected a fence across the backside of the property owned by Ricko, cutting off access to Sugarhouse Bayou. Mr. Dubois did this at Mrs. Bryant's direction. In October 2008, Mrs. Bryant had Mr. Dubois remove a fence on the eastern boundary of the property and destroy some concrete steps that went down to the water that Willie had built on property.

1

Ricko Construction and its president and owner, Roy Bennett, filed suit in December 2008 against Mrs. Bryant and Mr. Dubois seeking damages. A bench trial was held on January 27, 2010.

The trial court issued written reasons for judgment and found that Mr. Bennett had no right of action since Ricko, and not Mr. Bennett, is the owner of the property. The trial court found that the deed conveying the property to Ricko did not contain language transferring title to the land below the "high bank." The court further found that Ricko had not established adverse possession to establish title by acquisitive prescription of thirty years.

Ricko filed the present appeal claiming that the trial court should have recognized Ricko as the owner of the disputed property by thirty-years acquisitive prescription. In the alternative, Ricko argues that the trial court erred in refusing to rule on the navigability of Sugarhouse Bayou so as to allow Ricko to use the bank as a public thing.

**BURDEN OF PROOF**

Ricko claims that the action became a petitory action when Mrs. Bryant answered the suit claiming she was owner of the disputed property. Ricko argues that the trial court erred in finding that Mrs. Bryant had established "title good against the world" citing La.Code Civ.P.art. 3657 and *Duck v. Guillory*, 98-1358 (La.App. 3 Cir. 3/3/99), 737 So.2d 91, *writ denied*, 99-913 (La. 4/30/99), 743 So.2d 210.

Ricko filed an action in trespass. An action of trespass is neither a petitory, nor a possessory, nor a boundary action. *Harvey v. Havard*, 287 So.2d 780 (La.1973). Therefore, the action is not converted into a petitory action, and the issue becomes who has better title. *Id.*; *Hayward v. Noel*, 225 So.2d 638 (La.App. 1 Cir. 1969), *writ refused*, 254 La. 857, 227 So.2d 595 (1969); *Delacroix Corp. v. Dean*, 04-899

2

(La.App. 4 Cir. 4/13/05), 901 So.2d 1188. "[T]itle to the land is a pivotal issue simply because it is the foundation for the action and the plaintiff in such action bears the burden of proving his ownership." *Brown v. Bedsole*, 447 So.2d 1177, 1181 (La.App. 3 Cir.), *writ denied*, 450 So.2d 358 (La.1984).

Mrs. Bryant was not required to prove "title good against the world," and therefore the issue we must address is whether Ricko had better title than Mrs. Bryant.

### THIRTY-YEARS ACQUISITIVE PRESCRIPTION

There is no dispute in this case that Ricko and its ancestors in title did not have just title to the disputed property. However, Ricko argues that its ancestors in title exercised acts of adverse possession to the disputed area to establish ownership by prescription.

"Acquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." La.Civ.Code art. 3446. "Ownership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." La.Civ.Code art. 3486. "For purposes of acquisitive prescription without title, possession extends only to that which has been actually possessed." La.Civ.Code art. 3487.

"To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La.Civ.Code art. 3424. "Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing." La.Civ.Code art. 3425. "One is presumed to intend to possess as owner unless he began to possess in the name of and for another." La.Civ.Code art. 3427. "In the absence of title, one has possession only of the area he actually possesses." La.Civ.Code art. 3426.

3

"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles." La.Civ.Code art. 794. "If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds." *Id.* Privity of contract or estate is an essential prerequisite to tacking on the possession of an ancestor in title for prescriptive possession purposes. *Marks v. Zimmerman Farms, LLC*, 44,279, 44,280 (La.App. 2 Cir. 5/20/09), 13 So.3d 768.

The party seeking to establish title to property through acquisitive prescription bears the burden of proof. *Brooking v. Vegas*, 03-1114 (La.App. 3 Cir. 2/4/04), 866 So.2d 370, *writ denied*, 04-577 (La. 4/30/04), 872 So.2d 491.

The Slaytons bought the property in 1974; so if there were sufficient acts of possession over the disputed area for thirty years without interruption, then ownership of the property would have vested by virtue of acquisitive prescription in 2004.

> What constitutes possession depends primarily on the nature of the property. "The quality of possession required in a particular case depends not only on its classification as good or bad faith possession, but also on the type of land in dispute. *Liner v. Louisiana Land & Exploration Co., supra* at 772. The acts of possession required in the case of farm land must be of a greater quality than in the case of woodland; and, a greater quality of possession is required in the case of woodland than in the case of swamp or marsh land. *Liner, supra* at 772. Further, where an individual claims by corporeal possession alone and without title, he must show an adverse possession within enclosures. *Norton v. Addie, supra* at 436. " 'Enclosed' does not necessarily mean 'fenced in.' " *City of New Orleans v. New Orleans Canal, Inc.*, 412 So.2d 975, 981 (La.1982).

> > "What the court means by 'enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of the character and extent of the possession, to identify fully the property possessed, and to fix with

certainty the boundaries or limits thereof. . . ." *Hill v. Richey*, supra at 440.

*Chevron U.S.A. Inc. v. Landry*, 558 So.2d 242, 244 (La.1990).

There are clear enclosures in this case that were in existence when the Bryants bought the property. The eastern and western sides of the property were enclosed with fences, with a natural boundary, Sugarhouse Bayou, on the northern side. Highway 8 bounded the property on its southern side. These enclosures remained when the Bryants sold the property to the Slaytons.

Testimony on behalf of Ricko established that it was under the impression it bought the property all the way to the water. To establish corporeal possession, Ricko introduced the testimony of Willie Slayton, whose family acquired the home site in 1974 when he was twelve years old. He testified that the property was bounded on the east and west by barbed wire fences. The fences ran from a concrete marker on the property's boundary with Louisiana Highway 8 to the water's edge behind the house. Mr. Dubois owned the property on the west side of the fence, and the Bryants owned the property on the east side of the fence.

Willie testified that he mowed the bank with a push lawnmower many times as a young boy. His family barbequed in the disputed area, and they fished in the bayou from the bank. Willie testified that, at no time, did either of his parents acknowledge to him that someone had an ownership interest in the property. When he bought the property in 2004, he built some concrete steps on the bank which went close to the water's edge. He also moved a travel trailer on the property since the original house had been demolished around 2002. Willie also testified that Mr. Bryant did not use the property to the rear of the house when his family bought it. Willie testified that he intended to sell to Ricko the property all the way to the water.

5

When the Bryants bought the property in 1972, the fences were in existence. They bought several tracts of land at the same time with the boundaries extending to the center of Sugarhouse Bayou. At that time, the Bryants had Mr. Barrett Gremillion preform a survey which was completed on August 17, 1972. The survey marked the points of the high bank from Sugarhouse Bayou on all of the property. According to testimony, the sale to the Slaytons did not include the land from the high bank to the middle of bayou but only the 0.48 acres that included the house and down to the high bank. This is not disputed.

When the Bryants sold the property to the Slaytons, they did not take down the fences that enclosed that piece of property. Mrs. Bryant testified that her husband did not remove the fences because he had cattle on the rest of the property that was adjacent to the piece of land they sold to the Slaytons. According to Mrs. Bryant, she and her husband explained to Mr. Slayton that they were only selling the property down to the high bank. Mrs. Bryant stated that she would go on the property on occasion to visit the Slaytons.

Mr. Dubois testified that he had an oral agreement with Mrs. Bryant to lease the property in dispute after her husband died in 1991. He testified that he did not do much on the disputed property except to maybe walk on it on occasion. To access the property, he would climb over the fence adjacent to the property he owned.

There was never any testimony from Mrs. Bryant that she had leased the disputed property to Mr. Dubois. Mrs. Bryant agreed that she did not maintain this property. It was not until 2007 that Mrs. Bryant directed Mr. Dubois to erect a fence across the back side of the property. In October 2008, Mrs. Bryant directed Mr. Dubois to cut the fence on the eastern side of the property, in addition to cutting the timber on that side. Mr. Dubois was also directed to destroy the concrete steps at that

6

time.

Murrell Page testified that he was asked by Mrs. Bryant to help find the corners of her property after her husband died. Mr. Page had worked for a land surveyor. He went over to the property one afternoon, and Mr. O.D. Slayton came out of the house to ask him what he was doing. Mr. Slayton helped Mr. Page find the metal pipes establishing the boundaries, including the high water mark. Mr. Page testified that Mr. Slayton did not indicate that he owned the property all the way to the water's edge. Mrs. Bryant confirmed that Mr. Slayton helped them find the metal pipes in the ground.

Earline Humphrey, the Bryants' daughter, also testified at the trial. She was married at the time the Bryants originally bought the land. She testified that she always knew that her parents did not sell the section of the land from the high bank down to the water to the Slaytons.

The trial court found that Ricko had not established sufficient acts of adverse possession. Specifically, the trial court found that the Slaytons may have been possessing as adverse possessors on behalf of the Bryants. The trial court then further stated that all acts of possession at trial were not enough to start the running for thirty-year acquisitive prescription purposes until Willie built the concrete steps.

Based on the evidence presented at the trial, we cannot say that the trial court committed manifest error in finding that Ricko failed to establish title to the property by thirty-years acquisitive prescription. We agree with the trial court that there were not sufficient acts of possession over the disputed land to establish ownership. The testimony established that the Bryants indicated to the Slaytons that they were not selling the land past the high water mark. The Slaytons may have used the disputed land in conjunction with their own land but it appears from the evidence that they

7

were possessing on behalf of the Bryants. Mr. Page, a disinterested witness, even acknowledged that Mr. Slayton did not indicate he owned the disputed land when he helped him locate the metal pipe markers.

## NAVIGABILITY

In the alternative Ricko argues that the trial court should have addressed the issue of navigability. Ricko claims that it presented evidence that Sugarhouse Bayou was a navigable water body, entitling Ricko to use the bayou's banks as a public object.

A judgment that is silent as to part of the relief requested is deemed to have denied the relief. *Duhon v. Lafayette Consol. Gov't*, 05-657 (La.App. 3 Cir. 12/30/05), 918 So.2d 1114. The trial court did not address the issue of the navigability of Sugarhouse Bayou, so we deem it denied.

"Navigability is not presumed; the burden of proof rests with the party seeking to establish it." *State ex rel Guste. v. Two O'Clock Bayou Land Co., Inc.*, 365 So.2d 1174, 1177 (La.App. 3 Cir. 1978), *writ denied*, 367 So.2d 387 (La.1979).

> A body of water is navigable in law when it is navigable in fact. The factual question turns on whether the evidence shows a body of water to be suitable by its depth, width and location for commerce. However, lack of commercial traffic does not preclude a finding of navigability.

*Id.* (citations omitted)

Ricko introduced the testimony of Larry Decker, a surveyor with the Office of State Lands in Baton Rouge. Mr. Decker explained that the Office of State Lands deals with issues of historical navigability, meaning what was navigable at the time of statehood for Louisiana in 1812. He testified that the issue of whether Sugarhouse Bayou was navigable required further study.

8

Based on this evidence we find that the trial court was correct in denying Ricko's request to have Sugarhouse Bayou declared navigable.

For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed against Ricko Construction, Inc.

**AFFIRMED.**