AMY, J., dissenting.
In my opinion, even in light of the parties' stipulation regarding the Swamp Plaintiffs' ownership and if one accepts that the trial court was not manifestly erroneous in its conclusion regarding the classification of the area known as Catahoula Lake and the Lake Plaintiffs' ownership, prescriptive rules dictate a reversal in this matter. Chiefly, I find that the Plaintiffs' claims for compensation for inverse condemnation are barred by liberative prescription. Further, I believe that the Lake Plaintiffs lost any claim to ownership of the land by virtue of thirty-year acquisitive prescription.
In written reasons for judgment, the trial court provided an excerpt from a 1936 publication by the Department of Conservation, Louisiana Geological Society, which is titled "Geology of Catahoula and Concordia Parishes," and quoted it as follows:
At times of high water considerable areas are inundated by "backwater" not caused by overflow of levees. A considerable area of southern Concordia and Catahoula Parishes is so inundated every year. When the Mississippi or the Red is high, water is backed up the Black, Ouachita, Tensas, and Little Rivers, and flows backward through bayou openings into the adjoining lowlands. Catahoula Lake, normally dry, becomes a lake, and thousands of acres are covered from 1 to several feet deep. As the river stages are lowered, this water drains through bayous back into the rivers, and land is again available for pasturing of cattle and hogs. Very little of this black land is cultivated, except along the margins where late crops are sometimes harvested.
Prior to this lawsuit, the record indicates that the area known as Catahoula *568 Lake was treated as if it were a lake, and thus, as State-owned land. Additionally, in Sanders v. State, Dep't of Natural Res. , 07-821, p. 1 (La.App. 3 Cir. 12/19/07), 973 So.2d 879, 879, writ denied , 08-0438 (La. 4/18/08), 978 So.2d 352, a landowner "asked that a boundary be established between his land and the land owned by the State, as owner of the bed of Catahoula Lake and/or Little River." In its discussion, a panel of this court stated: "No one disputes the trial court's finding that Catahoula Lake is a lake, and it was stipulated at trial that it was navigable in 1812.... [T]he proper determination of the State's ownership is the ordinary high water mark." Id. at 882. Nonetheless, as mentioned above, even if one now accepts that the trial court was not manifestly erroneous in its conclusion regarding the classification of the area known as Catahoula Lake and the Lake Plaintiffs' ownership of the land, prescriptive rules require a reversal in this matter.
Initially, I find that La.R.S. 13:5111 bars the Plaintiffs' claims for compensation. Here, the Plaintiffs seek compensation for the increased water on their property that has resulted from the project. As this court explained in Hawthorne v. La. Dep't of Pub. Works , 540 So.2d 1261, 1262 (La.App. 3 Cir.), writ denied , 544 So.2d 406 (La.1989), "[t]he taking of property, by flooding or otherwise, without proper exercise of eminent domain, ... is considered an appropriation." See also Cooper v. La. Dep't of Pub. Works , 540 So.2d 1265 (La.App. 3 Cir. 1989) (hereinafter " Cooper I"). Concerning appropriations, La.R.S. 13:5111 provides, in pertinent part: "Actions for compensation for property taken by the state, a parish, municipality, or other political subdivision or any one of their respective agencies shall prescribe three years from the date of such taking." Under La.R.S. 13:5111, prescription begins to run when the claimant is aware of those facts which give rise to a cause of action. Hawthorne , 540 So.2d 1261. Based on the record in this case, the Plaintiffs or their ancestors in title were aware or should have been aware of the increased inundation of their lands no later than 1973 when the water level failed to seasonally subside as it had done in the past. I note that La.R.S. 13:5111 was not passed until 1975. See 1975 La. Acts No. 434, § 1. Regardless, because the Plaintiffs did not file their petition until May 4, 2006, which was more than thirty years after the passage of La.R.S. 13:5111, their claims for compensation had prescribed by the time they filed their petition. See Hawthorne , 540 So.2d 1261 (holding that the landowner's claim for compensation for a taking that occurred in 1972 was prescribed under La.R.S. 13:5111 because the landowner did not file suit until 1981).See also Cooper I, 540 So.2d 1265.
In asserting that their claims for compensation are not barred by liberative prescription, particularly La.R.S. 13:5111, the Plaintiffs base their argument, in part, upon the case of Cooper v. La. Dep't of Pub. Works , 03-1074 (La.App. 3 Cir. 3/3/04), 870 So.2d 315 (hereinafter " Cooper II"). In that case, landowners filed suit against the Louisiana Department of Public Works seeking compensation for the permanent flooding of portions of their land resulting from the same project at issue in the case at hand. The court characterized the landowners' claims as being based upon "the permanent flooding of portions of their lands which the impingement of their servitude of drainage caused" and determined that "any interference with a servitude is a violation of [Louisiana Civil Code] Article 667 which gives rise to a delictual action that prescribes in one year." Id. at 321, 322. Though the parties stipulated that the landowners were aware of the inundation *569 beginning in 1972 and suit was not filed until 1994, the panel concluded that the landowners' claims had not prescribed according to the continuing tort doctrine, stating:
[I]f the operating cause of injury is tortious and continually gives rise to successive damages, prescription begins to run from the cessation of the particular wrongful conduct causing the damage. "A continuing tort is occasioned by unlawful acts, not the continuation of the ill effects of an original, wrongful act."
In this matter, because each instance of damage (each interference with the servitudes of drainage) constitutes a tort under Article 667 and given Plaintiffs' belief that, both, the damage and interference are continuous, Plaintiffs assert that each of these torts qualifies as a continuing tort. We agree.
....
[P]rescription will not run in this case until the flooding of Plaintiffs' lands is abated. Therefore, we find, through application of the continuing tort theory, that prescription has not, yet, begun to run on their claims for compensation.
Id. at 322-23 (footnotes omitted). The court further reasoned that La.R.S. 13:5111 was inapplicable because the United States, not the State of Louisiana, had appropriated the landowners' property.
Although I recognize that the case concerns similar claims and the same project at issue herein, I find the analysis in Cooper II, 870 So.2d 315, ultimately unhelpful in the present matter. In my opinion, the Cooper II majority erred in applying tort doctrine to an appropriation claim and in finding that the United States, not the State, was the entity responsible for appropriating the landowners' property. In applying the continuing tort doctrine, the Cooper II majority broke from longstanding precedent in which this court has held that "[t]he taking of property, by flooding or otherwise, without proper exercise of eminent domain, is not a tort but is considered an appropriation." Hawthorne , 540 So.2d at 1262 (emphasis added) (citing Bernard v. State, Dep't of Pub. Works , 127 So.2d 774 (La.App. 3 Cir. 1961) ; Boothe v. Dep't of Pub. Works , 370 So.2d 1282 (La.App. 3 Cir.), writ denied , 374 So.2d 661 (La.1979) ). See also Cooper I, 540 So.2d 1265. I also note that in Hawthorne , 540 So.2d 1261, and in Cooper I, 540 So.2d 1265, the claims for compensation, which a panel of this court concluded had prescribed under La.R.S. 13:5111, were based on the same project at issue in Cooper II and in the present case.
Further, I disagree with the reasoning in Cooper II, 870 So.2d 315, that, if an appropriation occurred, the United States, not the State, is the entity responsible for the appropriation of the Plaintiffs' land. For example, in Succession of Rovira v. Bd. of Comm'rs of Port of New Orleans , 418 So.2d 1382 (La.App. 4 Cir.), writ denied , 423 So.2d 1147 (La.1982), the State agreed to furnish, free of cost to the United States, all lands, easements, rights-of-way, and spoil disposal areas for the construction of the Mississippi River Gulf Outlet (MRGO) and delegated this task to a local entity, the Dock Board. A portion of the plaintiffs' private property was occupied and used for the channel of the MRGO, but there had been neither expropriation proceedings nor compensation paid to the plaintiffs. Id. The plaintiffs sued the Dock Board, and, in concluding that the United States was not an indispensable party, the fourth circuit stated, in pertinent part:
It is clear from the documents ordering and empowering the Dock Board to acquire the rights-of-way that the Dock Board is the public body that was the "taker" of the land used in construction.
*570 The instant suit is a claim for compensation for the lands taken. The dispute is between plaintiffs and the Dock Board as "taker". It is of no moment that the United States, as ultimate recipient of the lands taken, constructed the waterway and now operates it. It is the Dock Board, not the United States, that must respond to the claim asserted by plaintiffs.
....
In our case, plaintiffs' claim is not for property damage occasioned by construction, but for compensation for the "taking" of the property.
Id. at 1386-87. Likewise, in this case, if one acknowledges the parties' stipulation regarding the Swamp Plaintiffs' ownership and accepts that the trial court was not manifestly erroneous in its conclusion concerning the Lake Plaintiffs' ownership, then the Plaintiffs' property was taken without expropriation proceedings or compensation paid to them. As the case is framed, the Plaintiffs seek compensation for the taking of their property, not for damage occasioned by construction of the project, so the dispute is between the Plaintiffs and the State as the "taker" of the land used for the project.
Thus, I conclude that the Plaintiffs' claims for compensation in this case should be governed by the prescriptive period in La.R.S. 13:5111 and properly resolved by reference to Hawthorne , 540 So.2d 1261 ; Cooper I , 540 So.2d 1265 ; and Succession of Rovira , 418 So.2d 1382. In my opinion, the analysis in Cooper II, 870 So.2d 315, should not be further applied by this court. I find that application of the continuing tort doctrine in this situation, as opposed to La.R.S. 13:5111, contravenes the rule that "is well settled under Louisiana law that when conflicting statutes are applicable, the one more specifically directed to the matter applies." Avenal v. State , 03-3521, p. 33 (La. 10/19/04), 886 So.2d 1085, 1108 n.29 (citing Estate of Patout v. City of New Iberia , 98-0961 (La. 7/7/99), 738 So.2d 544 ), cert. denied , 544 U.S. 1049, 125 S.Ct. 2305, 161 L.Ed.2d 1090 (5/23/05).
Having concluded in my analysis that the Plaintiffs' claims for compensation have prescribed according to La.R.S. 13:5111, the issue of the Lake Plaintiffs' ownership of the area known as Catahoula Lake remains. On appeal, the State filed an exception of prescription, asserting ownership by thirty-year acquisitive prescription. The Lake Plaintiffs rely on La.Const. art. 1, § 4 (B), and La.Const. art. 6, § 23 and cases interpreting it, in opposition.
I first address the Lake Plaintiffs' argument regarding La.Const. art. 6, § 23. Louisiana Constitution Article 6, § 23, which is titled "Acquisition of Property," provides: "Subject to and not inconsistent with this constitution and subject to restrictions provided by general law, political subdivisions may acquire property for any public purpose by purchase, donation, expropriation, exchange, or otherwise." (Emphasis added). As emphasized, I note that the plain language of the article indicates that it applies to political subdivisions of the State, not the State itself.
Further, in interpreting La.Const. art. 6, § 23, the supreme court has stated:
First, construing Section 23's "or otherwise" language as granting political subdivisions the authority to acquire property through acquisitive prescription would render La. Const. Art. VI, Sect. 24 superfluous.[1] This is so because *571 Section 23 broadly authorizes a political subdivision to acquire "property " through the enumerated means, "or otherwise." The jurisprudence of this state has long recognized the term "property" includes recognized dismemberments of ownership rights in a thing as well as full ownership of the thing. See, Columbia Gulf Transmission Co. v. Hoyt , 252 La. 921, 215 So.2d 114, 120 (1968). A servitude is one of these recognized dismemberments of ownership rights. See, Humble Pipe Line Co. v. Wm. T. Burton Industries, Inc. , 253 La. 166, 217 So.2d 188, 192 (1968) ("An easement is, however, property or an interest in land.") (Quoting 25 Am.Jur.2d Easements and Licenses, § 2, p. 417-18 ). Thus, Section 23 authorizes a political subdivision to acquire, through any of the listed methods, not only full ownership rights, but also servitudes. Accepting the Parish's contention, that Section 23's "or otherwise" language includes authorization for governmental subdivisions to acquire through acquisitive prescription , we would necessarily be led to the conclusion that Section 23 authorizes political subdivisions to acquire servitudes through acquisitive prescription. It is readily apparent that this was not the intent of Section 23, however, because Section 24 is directed solely to granting governmental subdivisions the limited authority to acquire servitudes through acquisitive prescription . Thus, interpreting Section 23 as granting political subdivisions the authority to acquire through acquisitive prescription would render Section 24 nugatory, a result incongruous with the rules of interpretation of our constitution. See, e.g., State ex rel. Guste v. Bd. of Commissioners of the Orleans Levee Dist. , 456 So.2d 605 (La.1984).
Second, in addition to the absurd consequence which would result from the Parish's proposed interpretation of Article VI, Sect. 23, we further note that Section 24 is dedicated entirely to a governmental subdivision's authority to acquire by prescription. The constitutional framers' dedication of an entire section to the matter of acquisitive prescription reflects the importance which they believed it deserved. It would be inconsistent with the framers' unreserved treatment of this matter with respect to servitudes , to conclude the framers' simple inclusion of the omnibus words "or otherwise" in Article VI, Sect. 23 were intended to authorize a political subdivision's acquisition of full ownership of immovable property through acquisitive prescription.
Finally, Article VI, Sect. 24's express recognition that acquisitive prescription should run in favor of political subdivisions with respect to servitudes reflects the constitutional framers' consideration of the possibility of a political subdivision obtaining property through acquisitive prescription. Despite their consideration of this possibility, the framers refrained from granting political subdivisions this right with respect to acquisition of full ownership of property. We can only conclude that this was a deliberate omission on the part of the framers.
....
Based on the foregoing, we believe it would be incorrect to conclude the constitutional framers, by the inclusion of the words "or otherwise" in Article VI, Sect. 23, intended to allow political subdivisions to acquire full ownership of property through acquisitive prescription.
Parish of Jefferson v. Bonnabel Props., Inc. , 620 So.2d 1168, 1170-71 (La. 1993) (footnote omitted). See also *572 Roy v. Belt , 03-1022 (La.App. 3 Cir. 2/18/04), 868 So.2d 209, writ denied , 04-1149 (La. 7/2/04), 877 So.2d 147 ; and King's Farm, Inc. v. Concordia Parish Police Jury , 97-1056 (La.App. 3 Cir. 3/6/98), 709 So.2d 953, writ denied , 98-1450 (La. 9/18/98), 724 So.2d 748. Though these cases do not provide an express legislative or constitutional pronouncement regarding a political subdivision's ability or inability to acquire land by acquisitive prescription, the Lake Plaintiffs have correctly pointed out that the courts have held that political subdivisions cannot acquire land in that manner under the "or otherwise" language of La.Const. art. 6, § 23.
However, even though, in the above referenced cases, courts have held that political subdivisions of the State cannot acquire land by acquisitive prescription under La.Const. art. 6, § 23, in my opinion the question remains whether the State itself may acquire property by acquisitive prescription. In Lincoln Parish Sch. Bd. v. Ruston Coll. , 162 So.2d 419, 426 (La.App. 2 Cir.), writ denied , 246 La. 355, 164 So.2d 354 (La.1964), the second circuit explained:
The words 'mere possessor,' as embodied in LSA-C.C. Art. 3458,[2 ] embrace the State and include all natural and artificial persons, such as individuals, corporations, bodies, corporate, and all other legal entities. No restriction or prohibition is directed against either. The constitutional provision relative to prescription as applies to the State prohibits the running of prescription against the State.
LSA-Constitution, Art. 19, s 16.[3 ] There is no prohibition in the organic law prohibiting the running of prescription in favor of the State or in favor of political corporations.
If public bodies or political corporations were prohibited from acquiring by prescription, such defects as may exist in a title to property acquired by purchase or donation could never be cured by possession of any nature, extent, and duration whatsoever. Such a conclusion would be contrary to sound reason and logic ...
As heretofore observed, prescription cannot run against the State. Nevertheless, in the absence of any express provision in the Constitution and Statutes authorizing the State to avail itself of the benefits of prescription acquirendi causa, it has been firmly recognized that such prescription does run in favor of the State. In Housing Authority of New Orleans v. Banks, 224 La. 172, 69 So.2d 5, 8, the court stated:
'The self evident truth is that the sovereign can prescribe against, but prescription cannot run against the State. Article XIX, s 16, La.Const. of 1921.'
A similar terse statement is made in Ward et al. v. South Coast Corporation et al., 198 La. 433, 3 So.2d 689, 692 :
'Prescription runs in favor of the state. Quaker Realty Co., Ltd., v. Purcell, 134 La. 1022, 64 So. 894 ; Norgress v. E. B. & S. P. Schwing, 128 La. 1040, 1043, 55 So. 667.'
While the cases quoted relate to tax sales and proceedings, no distinction is *573 observed in the principle of acquiring by prescription.
Lincoln Parish Sch. Bd. , 162 So.2d 419, was decided based on the Louisiana Constitution of 1921. At the time the case was decided, La.Const. art. 1, § 2 (1921) provided: "No person shall be deprived of life, liberty or property, except by due process of law. Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid." Here, the Lake Plaintiffs have alleged that the State is prohibited by the Louisiana Constitution of 1974 from acquiring private property through acquisitive prescription, specifically La.Const. art. 1, § 4, which provides, in pertinent part:
(A) Every person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property. This right is subject to reasonable statutory restrictions and the reasonable exercise of the police power.
(B)(1) Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Except as specifically authorized by Article VI, Section 21 of this Constitution property shall not be taken or damaged by the state or its political subdivisions: (a) for predominant use by any private person or entity; or (b) for transfer of ownership to any private person or entity.
In my view, the language of La.Const. art. 1, § 4 ("Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit.") is substantially similar to that of La.Const. art. 1, § 2 (1921) ("Except as otherwise provided in this Constitution, private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid."). Although Lincoln Parish Sch. Bd. , 162 So.2d 419, was decided under La.Const. art. 1, § 2 (1921), the reasoning of that case seems applicable to La.Const. art. 1, § 4. In fact, after the enactment of the Louisiana Constitution of 1974, the supreme court cited with approval to Lincoln Parish Sch. Bd. when observing "that unlike a private litigant, the state may derive title or ownership not simply by acquisition from a previous owner and/or by prescription but, as well, in other ways, not the least of which is the ownership of lands at the state's inception." Todd v. State, Dep't of Natural Res. , 456 So.2d 1340, 1352 (La.1983) (emphasis added) (footnote omitted), amended by 474 So.2d 430 (La.1985).
Louisiana Civil Code Article 1 provides: "The sources of law are legislation and custom." In my opinion, legislation and custom favor the State being able to acquire property by acquisitive prescription. I note that acquisitive prescription is the general rule of law, and the Lake Plaintiffs have not pointed to an express provision in the Louisiana Constitution, statutes, or caselaw excepting the State from the ability to derive ownership by acquisitive prescription. Though La.Const. art. 1, § 4 (A) provides "[e]very person has the right to acquire, own, control, use, enjoy, protect, and dispose of private property[,]" the article also states that "[t]his right is subject to reasonable statutory restrictions[,]" and I believe that the general rule of law of acquisitive prescription is such a restriction. Moreover, I note that the laws of the State provide safeguards to protect an individual's right to property. As discussed above, La.R.S. 13:5111 provides a three year prescriptive period for a landowner to bring a claim for compensation for the taking of property by the *574 State. Additionally, a landowner can bring an action to assert ownership for a period of thirty years before the State can obtain ownership of the property by virtue of acquisitive prescription.
I also find the State has proven the elements of thirty-year acquisitive prescription concerning the area known as Catahoula Lake. According to La.Civ.Code art. 3446, "[a]cquisitive prescription is a mode of acquiring ownership or other real rights by possession for a period of time." In order "[t]o acquire possession, one must intend to possess as owner and must take corporeal possession of the thing." La.Civ.Code art. 3424. Louisiana Civil Code Article 3486 states that "[o]wnership and other real rights in immovables may be acquired by the prescription of thirty years without the need of just title or possession in good faith." The party pleading acquisitive prescription bears the burden of proving the facts that are essential to support it by a preponderance of the evidence. Delacroix Corp. v. Perez , 98-2447 (La.App. 4 Cir. 11/8/00), 794 So.2d 862, writ denied , 00-3245 (La. 1/26/01), 782 So.2d 635 ; Crowell Land & Mineral Corp. v. Funderburk , 96-1123 (La.App. 3 Cir. 3/5/97), 692 So.2d 535. In particular, the party must plead acquisitive prescription concerning a thing that is susceptible of acquisition by prescription. See Chauvin v. Shell Oil Co. , 16-609 (La.App. 5 Cir. 10/25/17), 231 So.3d 903, writ denied , 17-1985 (La. 1/29/18), 233 So.3d 607. The party must also prove "continuous, uninterrupted, peaceable, public, and unequivocal" corporeal possession for thirty years. La.Civ.Code art. 3476. See also Mistric v. Kurtz , 610 So.2d 226 (La.App. 3 Cir. 1992), writ denied , 612 So.2d 102 (La.1993). I consider each of the requirements in turn.
According to La.Civ.Code art. 456, "[t]he banks of navigable rivers or streams are private things that are subject to public use." Further, La.Civ.Code art. 3485 provides that "[a]ll private things are susceptible of prescription unless prescription is excluded by legislation." Thus, if one accepts that the trial court was not manifestly erroneous in its conclusion that the area known as Catahoula Lake constitutes the river banks of Little River, La.Civ.Code arts. 456 and 3485 indicate that the area known as Catahoula Lake is a private thing susceptible of prescription. Moreover, the Lake Plaintiffs have not cited legislation that excludes the area known as Catahoula Lake from prescription. Therefore, accepting the trial court's factual findings and that framing of the applicable codal law, the area known as Catahoula Lake is a private thing susceptible of acquisition by prescription.
For purposes of determining acquisitive prescription, possession can be established by precarious possession, which is "[t]he exercise of possession over a thing with the permission of or on behalf of the owner or possessor[.]" La.Civ.Code art. 3437. See also Chauvin , 231 So.3d 903. For example, in Chauvin , the fifth circuit concluded that Shell Oil's possession of the property in question had been exercised by the precarious possession of entities to whom Shell Oil had granted servitudes over the property for a period of more than thirty years. Similarly, in the present case, the State granted permission to the United States Fish and Wildlife Service to manage the water levels in the area known as Catahoula Lake in the Catahoula Lake Water Level Management Agreement. The record indicates that the United States Fish and Wildlife Service began seasonally inundating and dewatering the area in 1972 according to the guidelines in the Water Level Management Agreement and continues to do so to the present day. Thus, the State's possession of the property has been exercised in this manner through the precarious possession of the United States *575 Fish and Wildlife Service since 1972. As of the date the Lake Plaintiffs filed their lawsuit, May 4, 2006, the State had certainly been in possession of the property for more than thirty years.
Regarding whether possession is continuous or discontinuous, La.Civ.Code art. 3436 provides that possession is "discontinuous when it is not exercised at regular intervals[.]" The record indicates that possession has been continuous in this case because, as discussed above, each year since 1972, the United States Fish and Wildlife Service has managed the water levels of the area known as Catahoula Lake based on the Water Level Management Agreement. Concerning whether possession has been uninterrupted or interrupted, the supreme court explained in Liner v. La. Land & Exploration Co. , 319 So.2d 766, 780 (La.1975), that "[p]ossession is interrupted when possession is lost." Louisiana Civil Code Article 3433 further explains that "[p]ossession is lost when the possessor manifests his intention to abandon it or when he is evicted by another by force or usurpation." Here, the record indicates that the State's possession has been uninterrupted as there is no evidence indicating that the State manifested an intention to abandon the area or that the State was evicted from the area during the thirty-year period beginning in 1972.
Further, the record indicates that the State's possession has been peaceable, there is no evidence to suggest otherwise, and the State's possession has also been public having been made conspicuous with the presence of more water on the lands in question for longer periods of time. See La.Civ.Code art. 3436. Concerning whether possession is unequivocal or equivocal, La.Civ.Code art. 3436 states that possession is "equivocal when there is ambiguity as to the intent of the possessor to own the thing." Here, the clarity of the State's intent to own the property is evidenced by the State granting access to the United States to raise and lower the level of State-owned waters over the property, as well as by granting mineral leases and exercising jurisdiction of the Louisiana Department of Wildlife and Fisheries over the subject property.
Louisiana Civil Code Article 3425 guides the determination of whether the State's possession has been corporeal by defining corporeal possession as "the exercise of physical acts of use, detention, or enjoyment over a thing." The corporeal possession must include such external signs of possession as to indicate that the possessor holds control and dominion over the property. Downs v. McNeal , 193 So.2d 843 (La.App. 3 Cir. 1967). According to Liner , 319 So.2d 766, the degree of corporeal possession required in a particular case depends upon the nature of the land and the use to which it is put; thus, whether activities constitute corporeal possession is a question of fact governed by the circumstances of the case. The jurisprudence further holds that when a party claims by corporeal possession alone and without title, he must show an adverse possession within enclosures. Norton v. Addie , 337 So.2d 432 (La.1976). In Chevron U.S.A. Inc. v. Landry , 558 So.2d 242, 244 (La.1990) (quoting Hill v. Richey , 221 La. 402, 421, 59 So.2d 434, 440 (1952) ), the supreme court explained the meaning of enclosures as follows:
"What the court means by 'enclosures', as that term is used in the numerous cases found in the jurisprudence, is that the land actually, physically, and corporeally possessed by one as owner must be established with certainty, whether by natural or by artificial marks; that is, that they must be sufficient to give definite notice to the public and all the world of *576 the character and extent of the possession, to identify fully the property possessed, and to fix with certainty the boundaries or limits thereof...."
See also Ricko Constr., Inc. v. Dubois , 10-1062 (La.App. 3 Cir. 2/9/11), 57 So.3d 564.
Turning again to the facts of the case, the record indicates that the disputed property is within a tract of wetland. Based on the nature of the property involved, the inundation and dewatering of the area known as Catahoula Lake is sufficient to constitute corporeal possession over the property. See La.Civ.Code art. 3425. See, e.g. , O'Brien v. Alcus Lands P'ship Trust , 577 So.2d 1094 (La.App. 1 Cir. 1991). Regarding whether the State's possession has been within enclosures, the record indicates that the project and the water management activities hold water on the subject property between the ordinary low stage of Little River up to the thirty-six (36) feet mean sea level contour. Thus, the State has satisfied the requirement of establishing corporeal possession within enclosures up to and including the thirty-six feet (36) mean sea level contour. See Ricko Constr., Inc. , 57 So.3d 564. Accordingly, the State has established the requirements of acquiring property by thirty-year acquisitive prescription.
In sum, I conclude that the Plaintiffs' claims for compensation for the appropriation of their property have prescribed under La.R.S. 13:5111. Further, in my opinion, the State has demonstrated ownership of the area known as Catahoula Lake by virtue of thirty-year acquisitive prescription. I find that the record warrants reversing the judgment of the trial court; sustaining the State's exceptions of liberative and acquisitive prescription; dismissing the Plaintiffs' demands for compensation and related relief, as well as dismissing the Lake Plaintiffs' demands for recognition of ownership; rendering judgment on the State's reconventional demand by recognizing the State's ownership of the area known as Catahoula Lake; and remanding with instructions to set the boundary between the Lake Plaintiffs' land and the State's land at the thirty-six (36) feet mean sea level contour. For these reasons, I respectfully dissent.

Louisiana Constitution Article 6, § 24 provides: "The public, represented by local governmental subdivisions, may acquire servitudes of way by prescription in the manner prescribed by law."

Prior to an amendment (see 1982 La. Acts No. 187, § 1), La.Civ.Code art. 3458 provided: "The prescription by which the ownership of property is acquired, is a right by which a mere possessor acquires the ownership of a thing which he possesses by the continuance of his possession during the time fixed by law."

Louisiana Constitution of 1921 Article 19, § 16 provided: "Prescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law." An identical provision is found in the Louisiana Constitution of 1974. See La.Const. art. 12, § 13.